A. Ross DAVIS, M.D., Appellant,

v.

Clifford MARSHALL et al., Appellees.

No. B2283.

Court of Civil Appeals of Texas, Houston (14th Dist.).

July 30, 1980.

Rehearing Denied Aug. 20, 1980.

Dan Ryan, John C. Marshall, Kevin H. Dubose, Ryan & Marshall, Houston, for appellant.

Joseph D. Jamail, S. Gus Kolius, Nat B. King, Jamail & Kolius, Houston, for appellees.

Before COULSON, SALAZAR and JUNELL, JJ.

SALAZAR, Justice.

This is an appeal by Dr. Davis, defendant below, from a judgment awarding $200,-000.00 damages to the Marshalls, plaintiffs below, for malpractice and negligence. We affirm.

On November 25, 1974, Joann Marshall was admitted to the Diagnostic Center Hospital for the purpose of corrective surgery for an enlargement of bone in her left foot. On the following afternoon Dr. Davis performed corrective surgery and the operation was successful. At the conclusion of the surgical procedure, a posterior plaster splint was applied to Joann's left leg, extending from the bottom of her heel to just below the knee. On Thursday, November

28, 1974, Joann was released from the hospital. Three days later she returned to Diagnostic Center Hospital complaining of a burning sensation in her leg underneath the cast. Dr. Davis met the patient and her family at the hospital, removed the cast and discovered a blistered area on the left calf. This condition ultimately left a scar on the back of her leg measuring approximately four inches by two and one-quarter inches. After trial to a jury, the jury found that Dr. Davis was negligent in the manner of applying the cast to Joann's leg and in the manner and method of medical care after surgery; that such acts proximately caused Joann's injuries; and that $200,000.00 would adequately compensate Joann for her injuries.

Davis complains on appeal that the findings of negligence and proximate causation are supported by no evidence or by insufficient evidence and that the damages awarded are excessive. We have examined the record and have determined that the evidence is sufficient to support the jury's findings.

█ In Texas a patient may have a cause of action against his doctor for malpractice if he can prove by a doctor of the same school of practice as the defendant (1) that the treatment complained of was such as to constitute negligence and (2) that it was a proximate cause of the patient's injuries. *Bowles v. Bourdon*, 148 Tex. 1, 219 S.W.2d 779 (1949).

*NEGLIGENCE*

The Marshalls claimed specifically that Dr. Davis was negligent in (1) using dip water which was too hot, (2) using too much plaster, (3) preventing ventilation by propping the freshly casted leg on a pillow, and (4) creating pressure points within the cast.

Dr. Davis' testimony (as an adverse witness) that the most likely cause of the cast burn was either defective plaster or his misapplication of the cast materials was buttressed by a similar statement made by his own witness, Dr. Cameron. Dr. Cameron testified unequivocally that Joann's cast burn was caused by "too much heat" gener-

ated within the cast and that the most probable cause of the excessive heat was misapplication of the cast by Dr. Davis or some defect in the Johnson & Johnson plaster. Both doctors testified that certain factors could cause more heat than normal to be generated in the exothermic reaction which naturally occurs when plaster of paris is setting; those factors included using too much plaster and using dip water that was too hot. They further testified that improper ventilation of the cast before the plaster had set would prevent dissipation of the heat and that it was the doctor's duty to see that pressure points were not created in the cast.

█ Nowhere did either doctor testify that any of the above factors was present in the instant case. In fact, both doctors expressly denied that any of the above examples of misapplication was a factor in causing Joann's burn. These denials, however, are not conclusive evidence that the cast was not misapplied. Rather, the doctors' testimony is only conclusive as to the standard of care in the defendant doctor's medical community. It is the jury's function thereafter to determine whether the doctor's acts conformed to the standard of care. Thus, the jury's function is limited strictly to determination of facts, which are applied to the standard of care established by expert testimony. In this case, the standard of care in applying a cast was uncontroverted; only the facts concerning how the cast was actually applied were controverted. Thus, the jury was free to reject any of Dr. Davis' assertions that the alleged negligent acts did not occur. We have examined the evidence and determined that the evidence was sufficient to support the jury's finding of negligence.

█ At trial it was established by uncontroverted evidence that Dr. Davis used 13 plies of Johnson & Johnson plaster bandages to make the posterior plaster splint. Dr. Cameron testified that he routinely used 12 plies and experienced no adverse effects. The package insert supplied by Johnson & Johnson in the box of plaster bandages said,

"[W]hen plaster splints are used, 5 to 8 plies are usually adequate." Both doctors recognized the insert as establishing the general parameters of the standard of care to be observed in the use of plaster bandages. Dr. Davis testified that the 13 plies formed a cast one-fourth inch thick, which according to the insert, would "usually develop sufficient strength for satisfactory immobilization of most fractures." The insert also said, "[T]hicker casts are rarely necessary." The insert did not say that a cast one-fourth inch thick would not generate too much heat. Given this testimony, we hold that the jury was free to believe that Dr. Davis used too much plaster.

■ Dr. Cameron established the standard of care concerning pressure points by testifying that it was the doctor's concern not to create pressure points within the cast. We hold that the jury was free to disbelieve Dr. Davis' testimony that he did not create pressure points and to believe that pressure points were in fact created, based on circumstantial evidence that the parts of the leg most likely to be burned if pressure points were created were in fact burned.

■ The package insert recommended saturation of the plaster bandages in dip water at room temperature (70° to 75°). Both doctors recognized the package insert as establishing a general standard of care, but both doctors testified that hotter water could be used as long as the cast was properly ventilated. Dr. Davis testified that he did not personally check the temperature of the dip water but that his nurse was under instruction to prepare the water at room temperature. This evidence supports the jury's finding that Dr. Davis breached the standard of care in not using dip water at room temperature.

■ The package insert warned against placing the freshly applied cast on a pillow. Yet Dr. Davis elevated Joann's leg in the recovery room by propping it on a pillow. Dr. Davis acknowledged that he had read the warning but noted that it applied only to the short period of time that the cast was setting. He testified that he did not prop the leg on the pillow until after the cast had set. The jury was free to disbelieve this factual assertion and to conclude, based on circumstantial evidence, that Dr. Davis set the cast on the pillow before the heat had dissipated.

### PROXIMATE CAUSATION

■ The next question in this case is whether the medical experts' testimony as to causation was sufficient to support the jury's finding of causation. Both experts testified that Joann's burn was caused by "too much heat." Both experts testified that the most probable cause of a cast burn was either defective plaster or misapplication of the cast materials. Neither testified that Joann's cast was misapplied or that misapplication in fact caused Joann's burn. Both testified that, in their opinions, defective plaster was the cause in fact of the burn, but both doctors admitted that they had no idea what the defect was and that their opinion was based only on the fact that something went wrong and their belief that Dr. Davis was not negligent.

We hold that the jury was free to reject the doctors' assertions that defective plaster was the cause of the burn and to accept as true the only other probable cause which was Dr. Davis' misapplication of the cast materials. Thus, the requirement of *Bowles v. Bourdon, supra,* that expert medical testimony is required to establish the proximate cause of the patient's injuries, is satisfied.

Finally, we believe that the jury might well have concluded, and was entitled to do so, that a combination of any of the alleged acts of negligence—too thick plaster, pressure points within the cast, water which was too hot, and a lack of sufficient ventilation—resulted in an abnormally high temperature rise and burned Joann Marshall's leg.

### EXCESSIVE DAMAGES

■ Dr. Davis also requests this court to exercise its power of remittitur in the amount of at least $100,000.00. We decline to diminish the award, recognizing that the

jury was in the better position to assess the amount of damages necessary to compensate Joann for the pain and mental anguish she suffered. *Hendrix Auto Parts v. Blackburn*, 433 S.W.2d 237, 241 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ).

We accordingly defer to the jury's finding and hold that the award of $200,000.00 is not manifestly excessive.

Affirmed.