Pete C. ARGUELLO and Mercy Arguello, Appellants,

v.

Dennis GUTZMAN, M.D., Appellee.

No. 04–91–00362–CV.

Court of Appeals of Texas, San Antonio.

June 24, 1992.

Rehearing Denied July 20, 1992.

Jerry V. Hernandez, Law Offices of Gregory W. Canfield, San Antonio, for appellants.

Constance S. Kirk, Bailey and Williams, San Antonio, Kevin J. Keith, Fowler, Wiles, Norton & Keith, L.L.P., Dallas, for appellee.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a summary judgment granted in favor of Dr. Dennis Gutzman in a medical malpractice action brought by Pete and Mercy Arguello.

Pete Arguello consulted Dr. Gutzman on April 9, 1987, complaining of pain in his right knee. Gutzman diagnosed the condition as a torn medial meniscus and operated on April 24. During the surgery, Dr. Gutzman discovered a bucket handle tear of the medial meniscus. In the attempt to repair the meniscus, one of the jaws of the instrument he was using broke and went into Arguello's knee. Unable to locate the broken piece through arthroscopic visualization or x-rays, Gutzman performed an arthrotomy. He found the piece and, using posterior palpation, brought the broken instrument up to remove it. Arguello was released from the hospital a few days later, and thereafter underwent physical therapy.

The Arguellos filed suit, cause no. 88–CI–16341, against Gutzman, alleging misrepresentation, lack of informed consent, and negligence in the use of the instrument and in failing to inspect it prior to surgery. Gutzman moved for summary judgment on the basis that there was no genuine issue as to any material fact regarding two essential elements of the Arguellos' *medical negligence action*, breach of duty and proximate causation. Gutzman's affidavit was filed in support of the motion for summary judgment.

The Arguellos responded that Gutzman's affidavit and supplemental affidavit contained conclusory statements and raised genuine fact issues concerning Gutzman's use of the instrument. Gutzman's affidavits, deposition, and answers to interrogatories, and Pete Arguellos' affidavit, were submitted in support of the response. Gutzman filed a supplemental affidavit.

The trial court entered an order granting the motion for summary judgment in favor of Gutzman on the negligence claim. The Arguellos appealed the interlocutory summary judgment. This court dismissed the appeal for lack of jurisdiction. The trial court subsequently ordered the false representation and lack of informed consent claims severed from the negligence cause of action and given cause no. 88–CI–16341–A.

The Arguellos' point of error on appeal is that the trial court erred in granting summary judgment because they presented sufficient summary judgment evidence to create a fact issue and Gutzman failed to prove that no genuine material fact issue existed as to one or more of the essential elements of the Arguellos' cause of action.

A defendant who moves for summary judgment has the burden of proving that no material issue of fact exists as to the plaintiff's cause of action and that it is entitled to judgment as a matter of law. *See Griffin v. Rowden*, 654 S.W.2d 435 (Tex.1983); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); TEX.R.CIV.P. 166a(c). This may be accomplished by disproving as a matter of law one or more of the elements essential to the plaintiff's claims. *Anderson v. Snider*, 808 S.W.2d 54 (Tex. 1991). Once the defendant establishes its entitlement to judgment as a matter of law, the plaintiff, as nonmovant, must present summary judgment proof to establish a fact issue. *Clear Creek*, 589 S.W.2d at 678. In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex. 1984). Every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in his favor. *Nixon*, 690 S.W.2d at 549; *Montgomery*, 669 S.W.2d at 311.

The essential elements of a plaintiff's malpractice cause of action are a duty requiring the physician to conform to a certain standard of conduct; the applicable standard of care and its breach; injury; and a causal connection between the breach of the standard of care and the harm. *Elam v. Yale Clinic,* 783 S.W.2d 638, 642 (Tex.App.—Houston [14th Dist.] 1989, no writ); *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Pinckley v. Gallegos, M.D., P.A.,* 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied). *See Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex. 1977); *Bowles v. Bourdon,* 148 Tex. 1, 219 S.W.2d 779, 782 (1949). Gutzman's motion averred his entitlement to summary judgment as a matter of law because of the lack of a material fact issue concerning the elements of breach of duty and proximate cause.

Gutzman's first affidavit set out his educational and professional background; his diagnosis of Arguello's condition as a torn medial meniscus; the details of the surgical procedure he performed; and the post-operative treatment. He stated he was familiar with the standard of care for the diagnosis and treatment of a patient such as Arguello and that, in his expert opinion based upon a reasonable degree of medical probability, his diagnosis and treatment of Arguello were in accordance with the appropriate standard of care. Gutzman also stated that the instrument did not break as a result of any action or inaction on his part, he used the instrument properly and correctly, and that based upon a reasonable degree of medical probability, no act or omission on his part caused or contributed to any injuries suffered by Arguello.

Gutzman's supplemental affidavit details the appropriate standard of care for the diagnosis and treatment of a patient such as Arguello. The patient is initially evaluated through a history and physical examination. When the orthopedic surgeon suspects the patient suffers from a torn medial meniscus, the surgeon should propose an arthroscopic medial mensicetomy. During the procedure, a scope is put into the knee for visualization, followed by probing, and removal of the damaged cartilage within the knee, or ligament reconstruction. If an instrument should break during the surgery, the standard of care requires the surgeon to search for and remove the instrument by use of arthroscopic visualization and x-ray. Gutzman referred to his previously executed affidavit, and stated that "no undue pressure or traction was asserted by me while ... using the meniscus grabber" and that "my use of the arthroscopic device in question was in accordance with the appropriate standard of care". He further stated that it was not his responsibility, as orthopedic surgeon, to examine the devices prior to surgery.

Pete Arguello testified in his affidavit and supplemental affidavit that as a result of the incident, he was hospitalized for several days, experiences continuous knee pain, and is unable to obtain employment or engage in recreational activities.

Gutzman testified in his deposition that he told Arguello his diagnosis of cartilage damage. Prior to surgery the instruments are normally checked by the operating room technician. It is uncommon for the instruments to break. He listed several factors that can cause the instrument to break: the position of the instrument, the particular procedure being performed, the instrument itself, and the anatomical arrangement of the patient. When asked again as to what can cause the instrument to break, Gutzman testified there are two possibilities: misuse and defect.

The Arguellos agree that Gutzman's affidavits state the appropriate standard of care. However, they contend that granting a summary judgment on the basis that no fact issue was created due to the lack of expert testimony establishing that the treatment or diagnosis of Gutzman constituted negligence and was a proximate cause of Arguello's injuries was error. The Arguellos argue the summary judgment evidence establishes that a fact issue exists whether Gutzman applied undue pressure or traction while using the instrument in question and that such issue was not conclusively negated as a matter of law by the summary judgment evidence.

A movant's right to summary judgment can be proved solely on the uncontroverted testimony of an expert witness if the subject matter is such that a trier of fact would be "guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted". *Anderson v. Snider*, 808 S.W.2d at 55; TEX.R.CIV.P. 166a(c). The affidavit of an interested expert witness can support summary judgment if it meets the requirements of Rule 166a, even if that expert is a party to the suit. *Anderson*, 808 S.W.2d at 55. If an interested expert witness presents legally sufficient evidence in support of a motion for summary judgment, the opposing party must produce other expert testimony to controvert the claims. *Id.*

The question is whether Gutzman's affidavits, deposition transcript, and interrogatory answers were sufficient to negate at least one of the elements of the Arguellos' claim. In *Charles v. Zamora, M.D.*, 811 S.W.2d 174 (Tex.App.—Corpus Christi 1991, writ denied), a doctor accused of negligence moved for summary judgment on the basis that his treatment met the appropriate standard of care and that he had not breached his duty to appellant. In his affidavit, the doctor set forth the standard of care and showed, with specificity, his compliance with that standard in treating the plaintiff. The defendant failed to respond with controverting expert testimony. The court held that the affidavit was sufficient to negate the elements of breach of the applicable standard of care and a causal connection between the breach of care and the harm suffered. *Id.* at 177. *See also Milkie v. Metni*, 658 S.W.2d 678 (Tex. App.—Dallas 1983, no writ).

Similarly, Gutzman's affidavits delineate the standard of care necessary in using the meniscus grabber and in removing it should it break during surgery. He lists the specific acts he performed while using it in the operation. Gutzman's expert testimonial evidence is clear, positive, direct, and free from contradictions and inconsistencies and readily controvertible. TEX. R.CIV.P. 166a(c). Gutzman produced evidence that he complied with the standard of care, and thereby negated all fact issues regarding the essential elements of breach and causation.

In a medical malpractice case, the requisite proof of negligence must be established through expert testimony. *Shook v. Herman*, 759 S.W.2d 743, 747 (Tex.App.—Dallas 1988, writ denied) (citing *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex.1977)). The burden shifted to the Arguellos to produce other controverting expert medical testimony. *Anderson*, 808 S.W.2d at 55; *Milkie*, 658 S.W.2d at 681.

### Res Ipsa Loquitur

Expert testimony is necessary when the alleged negligence is of such a nature as not within the experience of the layman. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982), *citing Hood v. Phillips*, 554 S.W.2d at 165. Accordingly, the Arguellos had the burden of presenting expert medical testimony controverting Gutzman's evidence on the issues of breach of the applicable standard of care and its causal connection to the injury or harm.

The Arguellos pleaded generally as to the doctor's use of the orthoscopic device in question, "because the nature of the negligence is plainly within the common knowledge of Layman (sic), the doctrine of res ipsa loquitur is applicable." It was further alleged that the instrument was used by the doctor when it broke and would not have occurred without negligence on his part.

*Res ipsa loquitur* is a rule of evidence, often referred to as a doctrine. In a medical malpractice case, the plaintiff consistently has been required to prove breach of duty and proximate causation by medical testimony. Jim M. Perdue, *Res Ipsa Loquitur: Applicability to Malpractice Cases in Texas*, 10 TEX.TECH.L.REV. 371, 372 (1979). The article states:

> [I]f the plaintiff cannot present expert testimony that a violation of the proper medical standard has occurred proximately causing his injuries, he has failed to present evidence sufficient to be sub-

mitted to the jury. *Because of this bi-furcated approach, the doctrine of res ipsa loquitur generally has been held to be inapplicable in Texas medical malpractice cases.* (emphasis added). The rationale for the doctrine's non-applicability is that the ordinary medical negligence case involves complex issues beyond the common knowledge of laymen. *Id.* at 373. As noted in the article, an exception may exist where the negligence alleged is in the use of mechanical instruments, operating on the wrong part of the body, or leaving surgical equipment inside the body. *See Rayner v. John Buist Chester Hosp.,* 526 S.W.2d 637, 639 (Tex.Civ. App.—Waco 1975, writ ref'd n.r.e.). However, Texas courts in medical malpractice cases have required that negligence and proximate cause be proved by medical testimony and have held that the doctrine of *res ipsa loquitur* is inapplicable except when the alleged malpractice and injuries are plainly within the common knowledge of laymen. *See Perdue, supra,* at 373.

■ The use of the instrument in question must be a matter plainly within the common knowledge of laymen. *Irick v. Andrew,* 545 S.W.2d 557 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). In *Williford v. Banowsky,* 563 S.W.2d 702 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.), the dental patient sued for a cut received when the dentist was using a high-speed rotary instrument. The court of appeals upheld the ruling of the trial court—instructing a verdict for the defendant. The plaintiff argued that under the doctrine of *res ipsa loquitur* a fact question was raised. The appellate court disagreed, holding that none of the recognized exceptions to the requirement of the necessity of medical testimony were applicable. "The proper use of a high-speed rotary instrument in a dental treatment is no more a matter plainly within the common knowledge of laymen than the use of an x-ray machine." Thus, the proper use of the particular instrument must be a matter plainly within the common knowledge of laymen. "Because it would be a rare situation in which the proper use of a medical instrument would be a matter within the common knowledge of laymen, application

of the doctrine of *res ipsa loquitur* in this situation would be limited." *Perdue* at 374–75.

■ In the present case the proper use of a meniscus grabber, an arthroscopic device employed by orthopedic surgeons, is not a matter plainly within the common knowledge of laymen. Consequently, breach of duty and causation must be proved by medical testimony. As previously stated, the Arguellos failed to controvert the medical testimony of Gutzman on the issues of standard of care, breach and causal connection.

■ The statements in Gutzman's affidavits could have been readily controverted by expert medical testimony. Moreover, the mere possibility that an act of negligence *might* have been the proximate cause of damages is not sufficient to support recovery. *Tilotta,* 752 S.W.2d at 163. Proof of mere possibilities will not support a fact issue. *See Duff v. Yelin,* 751 S.W.2d 175, 176 (Tex.1988). Conflicting inferences do not arise from the deposition, interrogatories' answers, and the affidavits. The Arguellos wholly failed to produce controverting expert medical evidence to rebut the summary judgment evidence presented by defendant. Gutzman's affidavits were sufficient to negate both the elements of breach of the applicable standard of care and a causal connection between the breach of care and the harm suffered. The trial court properly granted Gutzman's motion for summary judgment. The point is overruled.

■ The Arguellos filed their notice of appeal under cause number 88–CI–16341–A, the cause number given to the severed undisposed issues in this case. Gutzman's cross-point is that this court, therefore, does not have jurisdiction over the appeal.

In *City of San Antonio v. Rodriguez,* 828 S.W.2d 417 (1992), the appellants timely filed a notice of appeal in the proper court with the correct style but the wrong cause number. The court held that a court of appeals has jurisdiction over an appeal when the appellant files an instrument that is "a bona fide attempt to invoke appellate

court jurisdiction." *Id.* (quoting *Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.*, 813 S.W.2d 499, 500 (Tex.1991)).

This court has previously granted the Arguellos' motion to amend the notice of appeal and transcript and denied Gutzman's motion to dismiss. All requirements of notice were met except the use of the cause number. Dr. Gutzman was not disadvantaged or misled in any manner. The cross-point is overruled. The judgment is affirmed.

BIERY, Justice, concurring.

I concur in the result affirming the summary judgment; however, I write to point out and attempt to reconcile a conflict in the law of medical malpractice and summary judgment.

The dissent persuasively cites the case of *Davis v. Marshall*, 603 S.W.2d 359, 361 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.) where a closely analogous fact situation was presented to a jury. In *Davis*, the plaintiff suffered a severe burn after a plaster cast had been applied to her leg. *Id.* It apparently was undisputed that the cause of the burn was either defective plaster or the misapplication of the cast material by the physician. *Id.* In the case before us, the cause of the broken instrument was either a defective instrument or the misuse of the instrument from applying too much pressure by the physician. In *Davis*, the plaintiff did not have an expert testifying on her behalf. *Id.* Rather, as in the case before us, the defendant doctor and his medical expert witness both concluded and testified that the physician did not misapply the cast material. Nevertheless, the jury found in favor of the plaintiff and the court of appeals in *Davis* held the jury was free to reject the assertion that the alleged negligence did not occur. *Id.* at 362. Implicit in the *Davis v. Marshall* case is the proposition that, notwithstanding the lack of expert medical testimony on behalf of the plaintiff, a fact issue existed for the jury to resolve based upon whether the jury believed or disbelieved the defendant doctor and his medical expert.

By way of further potential conflict in this area of the law, is the case of *Haddock v. Arnspiger*, 763 S.W.2d 13, 15 (Tex. App.—Dallas 1988), *aff'd*, 793 S.W.2d 948 (Tex.1990). In *Haddock*, a different medical instrument was involved—a flexible colonoscope. Similar to this case, the question involved whether excessive pressure was applied in the use of the flexible colonoscope resulting in the perforation of the plaintiff's colon. *Id.* at 16. In *Haddock*, there was no motion for summary judgment as both the plaintiff and the defense presented medical testimony in favor of their respective positions. The jury resolved the conflicting medical testimony in favor of the physician. *Id.*

It would appear, therefore, at first blush that *Davis v. Marshall* would lead one to the conclusion that a fact issue exists in this case thereby precluding summary judgment. I note however that *Davis v. Marshall* was rendered in 1980 with the trial of the matter presumably being somewhere in the 1978 time period. Prior to 1978, Texas courts held that the affidavit of an interested or expert witness would not support a summary judgment. *See, e.g., Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828–29 (Tex.1970). Rule 166a(c) of the Texas Rules of Civil Procedure was amended in 1978 to specifically permit the granting of a motion for summary judgment based on the uncontroverted testimonial evidence of an interested witness, or of an expert witness, if the trier of fact must be guided solely by the opinion testimony of experts as to a subject matter. Under the new rule 166a(c), the summary judgment evidence must:

1) Be clear, positive and direct;
2) Be otherwise credible and free from contradictions and inconsistencies; and
3) *Be readily controverted.* (emphasis added)

The judicial policy reason for using expert opinion testimony at the summary judgment stage and requiring that a plaintiff present controverting expert testimony at the summary judgment stage is to test early in the litigation whether a particular claim or defense is frivolous and, if so, to allow early disposition before a cause pro-

ceeds to trial and perhaps be disposed of at the instructed verdict stage.

Given the Texas Supreme Court's recent pronouncement on res ipsa loquitur in *Haddock v. Arnspiger*, 763 S.W.2d at 15, I concur that res ipsa is not applicable to the case before us and therefore expert testimony is required of the plaintiff. Since the nature of the occurrence involves the breaking of a metal instrument, it seems that it might be appropriate to have a metallurgist or engineer give an opinion as to whether too much pressure was applied to this particular instrument or whether it was defective in its design or manufacture. That question, of course, is not before us because the plaintiff had no controverting expert testimony at all.

I conclude, therefore, that the apparent conflict between *Davis v. Marshall* and the evolution of the current summary judgment practice in the expert testimony area can be reconciled when one realizes that *Davis v. Marshall* was developed and tried prior to or at about the same time as the 1978 amendment to rule 166a(c).

Because the plaintiff did not present any controverting expert medical or engineering testimony, and because the defendant's opinions and conclusions could have been readily controverted, I concur in the affirmance of the summary judgment.

CHAPA, Justice, dissenting.

I respectfully dissent. The summary judgment should be reversed.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); TEX.R.CIV.P. 166a(c). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant. *Nixon*, 690 S.W.2d at 549; *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the nonmovant, and any doubts will be resolved in the nonmovant's favor.

*Nixon*, 690 S.W.2d at 549; *Montgomery*, 669 S.W.2d at 311. Therefore, the issue on appeal in a summary judgment case is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a(c).

In reviewing summary judgment evidence, it is well established that sworn pleadings and denials to requests for admissions are not summary judgment evidence in Texas. *Americana Motel, Inc. v. Johnson*, 610 S.W.2d 143 (Tex.1980). As such, a motion for summary judgment is a pleading and may not be considered as summary judgment evidence, *Kendall v. Whataburger, Inc.*, 759 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1988, no writ), nor is a response to summary judgment competent summary judgment evidence. *Rhodes v. Interfirst Bank Fort Worth, N.A.*, 719 S.W.2d 263, 264 (Tex. App.—Fort Worth 1986, no writ). However, affidavits, depositions, interrogatories, and admissions are proper summary judgment evidence when referred to or incorporated in the motion for summary judgment, *Stewart v. U.S. Leasing Corp.*, 702 S.W.2d 288, 290 (Tex.App.—Houston [1st Dist.] 1985, no writ), citing, *First Fed. Sav. & Loan Ass'n v. Bustamante*, 609 S.W.2d 845, 849 (Tex.Civ.App.—San Antonio 1980, no writ), but the trial court may not receive extrinsic evidence, either oral or documentary, at the hearing on the motion for summary judgment. *State v. Easley*, 404 S.W.2d 296, 297 (Tex.1966); *Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Statements contained in a brief also do not constitute summary judgment proof. *Nationwide Fin. Corp. v. English*, 604 S.W.2d 458, 463 (Tex.Civ.App.—Tyler 1980, dism'd as moot).

Supporting and opposing affidavits must be made on personal knowledge and set forth facts which would be admissible in evidence. TEX.R.CIV.P. 166a(f). Statements in an affidavit which are mere conclusions or which represent the affiant's opinion are insufficient. *See Wise v. Dal-*

las Southwest Media Corp., 596 S.W.2d 533, 536 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). The affidavit must set forth facts, not legal conclusions. *Beta Supply, Inc. v. G.E.A. Power Cooling Sys., Inc.,* 748 S.W.2d 541, 542 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *Harbour Heights Dev., Inc. v. Seaback,* 596 S.W.2d 296, 297 (Tex.Civ.App.—Houston [14th Dist] 1980, no writ). Hearsay statements contained in an affidavit are not sufficient controverting evidence. *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 233 (Tex.1962); *Lopez v. Hink,* 757 S.W.2d 449, 451 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Butler v. Hide-A-Way Lake Club, Inc.,* 730 S.W.2d 405, 411 (Tex.App.—Eastland 1987, writ ref'd n.r.e.).

In medical malpractice cases, "[o]rdinarily what constitutes reasonable care is a question for the jury." *Harle v. Krchnak,* 422 S.W.2d 810, 815 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). Further, "[o]rdinarily both negligence and proximate cause must be proven by medical testimony," and "[t]he doctrine of res ipsa loquitur is generally held by Texas courts to be inapplicable to medical malpractice cases." *Id.* at 814–15. However, "[an] exception to [both these rules] has been recognized where the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, as where the negligence alleged is in the use

of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body" and "[i]n such cases the requirement of medical testimony is eliminated, but the necessity of proof of negligence remains." *Id.* at 815; *see also Rayner v. John Buist Chester Hospital,* 526 S.W.2d 637, 639 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.).

In *Haddock v. Arnspiger,* 793 S.W.2d 948 (Tex.1990), the court stated:

Historically, *res ipsa loquitur* has been restrictively applied in medical malpractice cases: 'There are only very, very few instances where a pleading of res ipsa loquitur is applicable in medical malpractice cases.' *Goodnight v. Phillips,* 418 S.W.2d 862, 868 (Tex.Civ.App.—Texarkana 1967, writ ref'd n.r.e.).... In fact, Texas courts have generally recognized that *res ipsa loquitur* is inapplicable in medical malpractice cases.... However, an exception is recognized when the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony. Examples of this exception include negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body....

*Id.* at 951[1] (citations omitted; emphasis in original).

---

**1.** The concurring opinion misplaces its reliance on *Haddock,* 793 S.W.2d 948, as controlling here. As set out in the text of this opinion, the court in *Haddock* recognized the exceptions wherein res ipsa loquitur is applicable in medical malpractice cases, and this case falls within the three exceptions: 1) the nature of the malpractice falls within the common knowledge of laymen; 2) there was negligence in the use of the surgical instrument; and 3) part of a surgical instrument was left within the body. *Id.* at 951.

Clearly, it does not take a medical expert to know that a surgical instrument is not supposed to break and remain either in part or whole, inside the body. Further, the appellee doctor conceded that since the instrument in question normally did not break except through misuse or defect, he did not advise his patients of the possibility that the instrument in question might break. Without ever contending that the instrument was defective, the appellee doctor also

conceded that the instrument broke while he was using it on appellant's knee and that a piece of the instrument remained in the appellant's knee, which required a subsequent, more severe operation which caused harm to the appellant.

Further, *Haddock* is not controlling because it is easily distinguished from the case before us. Unlike the present case: 1) in *Haddock,* the allegations were directed at an alleged negligent proctological examination which the claimant contended caused a rupture, whereas the allegations in the case before us were directed at the doctor's handling of the instrument which caused it to break in the claimant's knee, leaving a piece of the instrument in the knee; 2) in *Haddock,* the flexible colonoscope used during the medical procedure did not break, nor did part of it remain inside the body of the claimant; 3) in *Haddock,* the evidence clearly disclosed that the instrument involved was a "sophisticated medical instrument which require[d] extensive training and experience for proper use" and was "not a matter plainly with-

Where "the most likely cause of the cast burn was either defective plaster or [the] misapplication of the cast material" by the doctor, the denial by two doctors that the cast material was misapplied was "not conclusive evidence that the cast was not misapplied" even without opposing medical testimony, for "[i]t is the jury's function thereafter to determine whether the doctor's acts conformed to the standard of care," and "the jury was free to reject any of [the doctor's] assertions that the alleged negligence did not occur." *Davis v. Marshall*, 603 S.W.2d 359, 361 (Tex.Civ.App.— Houston [14th Dist.] 1980, writ ref'd n.r.e.); *see Williams v. Bennett*, 610 S.W.2d 144, 146 (Tex.1980); *Bronwell v. Williams*, 597 S.W.2d 542, 546–47 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

With regard to the negligence allegations, the appellants contended at the summary judgment that the appellee was negligent in 1) failing to offer alternative procedures to appellants; 2) failing to properly inform the appellants of all the risks involved with the surgical procedures; 3) failing to adequately answer all of appellants' inquiries and falsely misleading the appellants concerning the consequences of the surgery; 4) failing to properly examine and inspect the surgical device that failed prior to surgery; and 5) misusing the instrument during surgery, causing it to break inside appellant's knee. Appellants further asserted that the doctrine of res ipsa loquitur applied since the instrument that broke during surgery, while in use by the appellee, would not in the ordinary course of events have broken without negligence on the part of the appellee. Moreover, appellants maintained that because of the negligence of the appellee, which caused the instrument to break in the appellant's knee, the appellant was required to undergo additional, more serious surgery in order to remove the broken piece, as well as hospitalization which would not have been otherwise necessary.

The summary judgment evidence indicated that appellee: 1) did not deny that any other procedures were available to the appellant, or that he so advised the appellant; 2) conceded that he did not make it a practice to advise his patients of the risk of a broken instrument, since that did not normally occur; 3) conceded that he had advised the appellants that the arthroscopic medial meniscectomy procedure originally planned for the appellant would ordinarily not take long and would not require hospitalization; 4) conceded that he never examined or inspected the surgical instruments used during surgery; 5) conceded that the meniscus grabber he was using during the arthroscopic medial meniscectomy procedure on the appellant broke while he was using it, which normally occurred only through misuse or defect; 6) failed to contend that the instrument was defective, thereby leaving only the question of his misuse of the instrument; 7) conceded that because a piece of the instrument remained in the knee of the appellant, appellee was required to perform an additional and more difficult surgical procedure, known as an arthrotomy, to remove the piece from the appellant's knee; and 8) conceded that this more difficult, additional procedure caused the appellant to endure additional surgery, hospitalization and related consequences which were not normally necessary for the original arthroscopic medial meniscectomy procedure.

Although the appellee never contended the meniscus grabber was defective, in his affidavits the appellee attempted to satisfy his burden with regard to the allegations of misuse of the meniscus grabber by stating: 1) "At all times, I properly and correctly

---

in the common knowledge of laymen," whereas *no such summary judgment evidence was presented regarding the instrument in this case*; and 4) *Haddock* was not a summary judgment case.

Moreover, the concurring opinion concedes that the issue in the case before us does not involve the necessity of medical testimony at all, suggesting instead that "[s]ince the nature of the occurrence involves the breaking of a metal instrument, it seems that it might be appropri-

ate to have a metallurgist or engineer give an opinion as to whether too much pressure was applied to this particular instrument or whether it was defective in its design or manufacture." Certainly, this appellant should not be denied his day in court because he failed to present the testimony of a metallurgist or engineer at the summary judgment hearing, based on the premise that medical expert testimony was required in this medical malpractice case.

used the arthroscopic device in question"; 2) "I would further state that no undue pressure or traction was asserted by me while I was using the meniscus grabber on Pete Arguello"; and 3) "It is my expert opinion that the instrument was not misused by me, and it did not break because of any neglect on my part." Clearly, these are conclusions which will not support a summary judgment. *Wise*, 596 S.W.2d at 536. Although the appellants properly objected to these conclusions, the summary judgment was nevertheless granted.

In his motion for summary judgment, the appellee contends that he is entitled to a summary judgment because:

The basis of this Motion for Summary Judgment is two-fold: there is no genuine issue as to any material fact regarding two essential elements of Plaintiffs' medical negligence action, breach of duty and proximate cause. First, the Defendant, Dennis Gutzman, M.D., did not fall below the standard of care for physicians practicing orthopedic surgery, in treating and operating upon Pete Arguello. Second, the actions of Dennis Gutzman, M.D. did not cause any injury to the Plaintiff.

It is uncontested that the appellant was additionally damaged during the surgery performed by the appellee because the instrument broke while being used by the appellee during the procedure. It is also uncontested that the additional damages to the appellant were in the form of an additional, more severe surgical procedure which was required to remove the piece of the instrument still in appellant's knee, hospitalization, and other related consequences. Therefore, the only remaining question as to this cause of action is whether the negligence of the appellee doctor caused the damages suffered by the appellants. Consequently, this being a summary judgment case, the dispositive issue is whether the appellee has established his burden of showing that no genuine issues of material fact exist as to his negligence and that he is entitled to judgment as a matter of law. *Nixon*, 690 S.W.2d at 548.

Initially, we note that appellee has relied on objected to conclusions which will not support a summary judgment. *Wise*, 596

S.W.2d at 548. Further, this case clearly involves "the use of mechanical instruments," and the "leaving [of a part of a] surgical instrument within the body." *Rayner*, 526 S.W.2d at 639. Thus, this case falls within the exceptions to the general rule, which eliminates the requirement of medical testimony, permits the application of res ipsa loquitur, and leaves questions of fact for the jury's determination. *Davis*, 603 S.W.2d at 361; *Id.* at 639. Moreover, the summary judgment evidence presented to the court failed to eliminate all issues of fact as to whether appellee's negligence caused the uncontradicted consequential damages suffered by the appellants resulting from the breaking of the surgical instrument at the hands of the appellee during the surgical procedures performed. *Nixon*, 690 S.W.2d at 548; *Wise*, 596 S.W.2d at 536. The point should be granted.

The majority and concurring opinions leave claimants in these circumstances between a rock and a hard place. Two things are absolutely clear: 1) if the doctor had left the entire instrument in the knee instead of just a piece of the instrument, no medical evidence would have been required of the appellant to avoid the summary judgment; and 2) as between the claimant, the doctor, and the manufacturer, only the claimant is alleged to be free of any negligence, having done nothing but provide his leg.

According to the doctor, the harm to the claimant was caused either through the doctor's misuse of the instrument, or because the instrument was defectively made by the manufacturer. The manufacturer will undoubtedly take the position that the instrument was not defective and, therefore, it must have been misuse by the doctor that caused the harm. Although the claimant will have been required to present medical evidence merely to have his day in court against the doctor, the manufacturer will simply point to the doctor's own statement in attempting to escape liability without presenting any medical testimony at all. Somehow, this disturbs my sense of justice.

Because issues of fact remain, this summary judgment should be reversed and remanded for trial.