TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00512-CV







Janie Richards, Ada Swarick, and John Trevino, Individually


and as Heirs of Ada Trevino, Deceased, Appellants


v.



Dr. Larry Orrick and King's Daughters Hospital Association, Appellees







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 146,236-B, HONORABLE RICK MORRIS, JUDGE PRESIDING







PER CURIAM


 Appellants Janie Richards, Ada Swarick, and John Trevino challenge a summary
judgment in favor of appellees Dr. Larry Orrick and King's Daughters Hospital Association. 
Appellants brought a medical malpractice suit against appellees after their mother, Ada Trevino,
died. Appellees filed for summary judgment on the ground that they had not breached the
applicable standard of care and their treatment of Trevino did not proximately cause her death. 
The trial court granted summary judgment on unspecified grounds. We will affirm the trial-court
judgment.



THE CONTROVERSY


 Trevino was diagnosed with renal cell carcinoma in 1991. She was admitted to
King's Daughters Hospital on January 13, 1992, complaining of severe abdominal pain. On
January 18, 1992, Dr. Orrick performed exploratory laparotomy surgery to determine the cause
of the pain. He determined that Trevino had intra-abdominal metastatic cancer, omental cancer,
endometrial cancer, uterine cancer, metastatic renal cell carcinoma and generalized metastasis.

 After her release from King's Daughters Hospital on January 26, 1992, Trevino
stayed with Swarick until February 25, 1992, when she was admitted to Metroplex Hospital for
a urinary tract infection. On March 3, 1992, she was transported to Killeen Nursing Center. On
March 12, 1992, she was transferred to Bellhaven Nursing Home where she stayed approximately
twenty-four hours before returning to Metroplex Hospital. 

 Trevino was moved to Metroplex Hospital because she was unresponsive and
having difficulty breathing. Dr. Suvunrungsi, her treating physician, determined that she had
carcinomatosis with generalized metastases, chronic urinary tract infection with acute
exacerbation, and an acute upper respiratory infection or pneumonitis. 

 On March 18, 1992, Dr. Suvunrungsi noted that the nurse had found and removed
some type of packing or gauze from Trevino's vagina two days earlier. He did not see or test the
packing. On March 28, Dr. Suvunrungsi noted that he would consider another course of
antibiotics since Trevino's fever was "probably due to tissue necrosis." On April 7, 1992,
Trevino was febrile, confused, disoriented, congested and having more difficulty breathing. Dr.
Suvunrungsi noted that her heart was failing and she appeared to be in a terminal state. Trevino's
condition deteriorated rapidly over the next few days. She died on April 10, 1992, at seventy
years of age. 

 Dr. Suvunrungsi, the signatory on the death certificate, testified by deposition that
the primary cause of death was septicemia due to staphylococcus gemella haemolysans, and the
secondary cause of death was cancer. (1) Appellants filed suit, alleging that appellees left packing
in Trevino's vagina after the January 18, 1992 procedure, and that the packing caused toxic shock
syndrome that resulted in her death. 



ANALYSIS


 The standards for reviewing a motion for summary judgment are well established:
(1) The movant for summary judgment has the burden of showing that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). 

 A motion for summary judgment may not be granted simply because the nonmovant
does not respond. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). 
Until the movant has proven that it is entitled to judgment as a matter of law, the burden does not
shift to the nonmovant to raise issues of fact that would defeat summary judgment. Id. But, once
the movant has met its burden, a nonmovant must expressly raise in its response fact issues that
would preclude summary judgment. McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
341 (Tex. 1993); Pinckley, 740 S.W.2d 529, 534 (Tex. App.--San Antonio 1987, writ denied).

 Appellees' Grounds and Summary Judgment Evidence

 A defendant is entitled to summary judgment if it can negate a single essential
element of the plaintiff's cause of action. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828
(Tex. 1970). The plaintiff in a medical malpractice suit must prove that the defendant owed it a
duty; that the defendant breached that duty; that the breach proximately caused the complained-of
injury; and damages. Bradford v. Alexander, 886 S.W.2d 394, 396 (Tex. App.--Houston [1st
Dist.] 1994, no writ). Appellees moved for summary judgment on the grounds that (1) they had
negated the element of breach by evidence proving that they did not place the packing in Trevino's
vagina, and (2) they had negated the element of causation by proving that Trevino did not die of
toxic shock syndrome. 

 By points of error six through eight, appellants assert that the trial court erred in
rendering summary judgment for appellees on the ground that Trevino did not die from toxic
shock syndrome. Appellees, in support of their joint motion for summary judgment, submitted
the affidavits of Dr. Larry Orrick and Nurse Camille Roussey Carter; the deposition testimony
of Dr. Suvunrungsi; and medical records from Dr. Orrick, King's Daughters Hospital, Dr.
Suvunrungsi, and Metroplex Hospital. We will examine appellees' summary judgment evidence. Dr. Orrick averred that he did not place, order to be placed, or saw any foreign
object, vaginal packing, sponge, gauze or any other material inserted into Trevino's vagina. 
Nurse Carter, the operating nurse in charge during the January surgery, averred that she did a
sharps and sponge count three times to ensure that every sponge was accounted for, and that in
fact all implements were accounted for. 

 Dr. Suvunrungsi testified that septicemia is a general term describing a blood
infection and that toxic shock syndrome is one type of septicemia. However, he also testified that
septicemia has many other causes. He stated that, based on a reasonable medical probability,
Trevino died from infection caused by pneumonia. He also testified that the type of
staphylococcus bacteria Trevino was infected with was, based on reasonable medical probability,
unrelated to toxic shock syndrome.

 We conclude that appellees' summary judgment evidence regarding causation was
legally sufficient to shift the burden to appellants to raise factual issues that precluded summary
judgment. McConnell, 858 S.W.2d at 341; Pinckley, 740 S.W.2d at 534. We will examine
appellants' response to determine whether they met their burden.



 Appellants' Response

 Appellants relied on the affidavit of Dr. Fadal and the deposition testimony of Dr.
Suvunrungsi to prove that a material issue of fact precluded the grant of summary judgment on
the ground that appellees had disproved causation. (2)

 The surgery Dr. Orrick actually performed was an exploratory laparotomy. It is
undisputed that a patient undergoing an exploratory laparotomy would not require vaginal
packing. However, Dr. Orrick had originally considered an abdominal hysterectomy, and
Trevino had consented to such an operation. Dr. Fadal focused on the possible abdominal
hysterectomy rather than the actual laparotomy on the theory that the patient could have been
prepped for the possible operation.

 Dr. Fadal testified that an operating physician would foresee before performing an
abdominal hysterectomy that (1) there would necessarily be bleeding into the vagina resulting from
the severing of the cervix and uterus from the end of the vagina and the closure of the end of the
vagina, and (2) packing inserted into the upper part of the vagina would serve as a valuable means
for the surgeon to determine the location of the end of the vagina by pressing the uterus and cervix
against the packing. He stated that the insertion of packing in the vagina prior to such surgery
would be proper and in accord with the care ordinarily had and exercised by the average physician
performing such surgery in Texas. However, he further opined that the failure to remove the
packing that very day if a decision is not made not to perform an abdominal hysterectomy would
violate the standard of care ordinarily exercised by the average physician in Texas. He finally
stated that, assuming that packing is left in a woman's vagina for more than thirty days and that
a few days before its removal she begins to run a high fever, it was his opinion that the packing
would have caused the woman to develop toxic shock syndrome. 

 In sum, Fadal's testimony is that it would have been reasonable to insert packing
into a woman's vagina to perform an abdominal hysterectomy, but, once inserted, it would not
have been reasonable to leave it in, and that, if it was left in for more than thirty days, and the
woman became febrile, the packing would have caused toxic shock syndrome. This reasoning is
too tenuous to raise a fact issue regarding causation. See, e.g., Arguello v. Gutzman, 838 S.W.2d
583, 588 (Tex. App.--San Antonio 1992, no writ) (proof of mere possibilities will not raise fact
issue). (3)

 Dr. Fadal never states that Trevino, within reasonable medical probability, died of
toxic shock syndrome, nor does he controvert appellees' summary judgment evidence that Trevino
most probably died of pneumonia. In the face of Dr. Suvunrungsi's testimony that Trevino's
sepsis probably was not caused by toxic shock syndrome, appellants should have produced
medical testimony proving that Trevino's sepsis probably was caused by toxic shock syndrome. 
Dr. Fadal's affidavit proves only that it is possible for a woman who has had packing in her
vagina for at least thirty days and who becomes febrile to have developed toxic shock syndrome. 
A great many complications could have hypothetically occurred given the number of serious
medical problems from which Trevino suffered.

 Neither does Dr. Suvunrungsi's deposition testimony raise a fact issue regarding
causation. His testimony was not, as appellants assert, that sepsis is synonymous with toxic shock
syndrome, but rather that toxic shock syndrome is one type of sepsis. He did not, at any point,
change his mind regarding sepsis as a cause of death. The issue is the origin of the sepsis. 
Appellants wholly failed to produce controverting expert medical evidence to rebut appellees'
summary judgment evidence regarding causation.

 Appellants raise for the first time on appeal that proof of causation is not required
if the doctrine of res ipsa loquitur applies. Res ipsa loquitur is a rule of evidence that is often
referred to as a doctrine. To use this doctrine, there must be proof that: (1) the character of the
accident is such that it would not ordinarily occur absent negligence, and (2) the instrumentality
causing the injury was under the management and control of the wrongdoer. Marathon Oil Co.
v. Sterner, 632 S.W.2d 571, 573 (Tex. 1982).

 First, we note that appellants raise the issue too late. Res ipsa loquitur must be
specifically pleaded to give the defendant fair notice that the plaintiff plans to rely on it. Wichita
Falls Traction Co. v. Elliott, 81 S.W.2d 659, 667 (Tex. 1935); Brown Express Co., Inc. v. Burns,
608 S.W.2d 291, 293 (Tex. Civ. App.--Waco 1980, no writ). Appellants' first amended petition
does not raise res ipsa loquitur; neither does their response to the motion for summary judgment.

 Second, res ipsa loquitur does not relieve appellants of the need to prove causation. 
See Kalteyer v. Sneed, 837 S.W.2d 848, 853 (Tex. App.--Austin 1992, no writ). The doctrine of
res ipsa loquitur would allow an inference of negligence in the absence of expert testimony that
the standard of care had been breached, but it does not eliminate the need for evidence of
causation. Smith v. Caplan, 425 S.W.2d 477, 480 (Tex. Civ. App.--Amarillo 1968, no writ). 
There must be a "causal connection between the complained-of act and the complained-of injury"
before res ipsa loquitur will be applied. Kalteyer, 837 S.W.2d at 853; Louis v. Parchman, 493
S.W.2d 310, 320 (Tex. Civ. App.--Fort Worth 1973, writ ref'd n.r.e.); see also 4 Fowler V.
Harper, Fleming James, Jr. & Oscar S. Gray, The Law of Torts § 19.4 (2nd ed. 1986).

 We overrule points of error six through eight. Because appellees' only had to
negate one element of appellants' cause of action to prevail, we need not consider points of error
one through five.



CONCLUSION


 We affirm the trial-court judgment. 


Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: August 28, 1996

Do Not Publish 
1.   A copy of the death certificate showing the cause of death was not part of the
appellate record. However, Dr. Suvunrungsi testified by deposition regarding the causes
of death and the contents of the death certificate.
2.   Dr. Fadal apparently reviewed only Dr. Orrick's affidavit and attachments in
preparing his affidavit; he does not state that he reviewed Trevino's medical records.
3.   We cite Gutzman for the proposition that hypothetical possibilities will not preclude
summary judgment. However, we disagree with its reliance on Duff v. Yelin, 751 S.W.2d 175
(Tex. 1988), which is an instructed verdict case. The standard for reviewing a defendant's
summary judgment differs greatly from the standard for reviewing a defendant's instructed
verdict. See, e.g., Lesbrookton, Inc. v. Jackson, 796 S.W.2d 276, 285-86 (Tex.
App.--Amarillo 1990, writ denied); Jones v. General Elec. Co., 543 S.W.2d 882, 884 (Tex.
Civ. App.--El Paso 1976, writ ref'd n.r.e.); see also Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970) (question on appeal is whether summary judgment proof
establishes as a mater of law no genuine issue of material fact exists, not whether proof raises
fact issue).