Camilla STEINKAMP, Appellant,

v.

CAREMARK and Patricia
Arreola, Appellees.

No. 08–98–00425–CV

Court of Appeals of Texas,
El Paso.

Sept. 23, 1999.

Rehearing Overruled Nov. 3, 1999.

Victor F. Poulos, Law Offices of Victor F. Poulos, P.C., El Paso, for Appellant.

Kay C. Jenkins, Kemp, Smith, Duncan & Hammond, El Paso, for Appellees.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from the trial court's summary judgment in favor of the defendant nurse and her employer on the plaintiff's nursing negligence claims. We affirm in part, and we reverse and remand in part.

### FACTS

On November 16, 1993, appellee Patricia Arreola, a home care nurse employed by appellee Caremark, was caring for Camilla Steinkamp, who was homebound with a difficult pregnancy. Arreola inserted a catheter in Steinkamp's arm, which began to disintegrate in Steinkamp's vein. Steinkamp had to undergo surgery to remove the catheter fragments without anesthesia because of her pregnancy. She sued Arreola and Caremark, contending that Arreola's negligent insertion of the catheter caused it to disintegrate. She also sued Vygon Corporation, the manufacturer of the catheter. Steinkamp claimed damages in the form of physical pain and mental anguish for having to undergo surgery without anesthesia and present and future physical pain and mental anguish for suffering a permanent, physical impairment known as thoracic outlet syndrome. Vygon filed a motion for summary judgment and a subsequent motion for severance, both of which the trial court granted. Arreola and Caremark then filed their motion for summary judgment. In her response to that motion, Steinkamp relied in part upon Vygon's summary judgment motion and corresponding evidence. That summary judgment evidence included affidavits from Vygon Vice–President John Leaity, engineering professor David Hullender, and registered nurse Rebecca Wilkins, as well as testimony excerpts from Arreola's de-position. Steinkamp also expressly relied on her own responses to Vygon's summary judgment motion, as well as a deposition excerpt from her own nursing expert, Dr. Helen Castillo.[1] Arreola and Caremark objected to Steinkamp's reliance on Vygon's summary judgment evidence, asserting that that evidence was a part of the Vygon case, which had been severed, was not a part of the Caremark case, and therefore was not properly before the trial court. The trial court agreed with Arreola and Caremark, struck that portion of Steinkamp's proffered summary judgment evidence that had originated in the Vygon claim, and granted the defendants' motion for summary judgment. On appeal, Steinkamp challenges the trial court's order striking some of her evidence and the trial court's ultimate decision to grant summary judgment in favor of Arreola and Caremark.

### STANDARD OF REVIEW

Caremark and Arreola filed a no-evidence summary judgment motion pursuant to Rule 166a(i) of the Texas Rules of Civil Procedure. The Rule provides:

After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.[2]

Since its inception, appellate courts have held that the standard of review for a no-evidence summary judgment is the same

---

1. Also as part of her proffered summary judgment evidence, Steinkamp attached an affidavit by her attorney that references reports by Dr. Castillo and Lawrence Duke; however, those reports do not constitute proper sum-mary judgment evidence as mandated by TEX.R. CIV. P. 166a(c), (f). Thus, this court cannot consider them.

2. TEX.R. CIV. P. 166a(i).

as that for a directed verdict.[3] Thus, we must review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences.[4] A no-evidence summary judgment is improperly granted if the respondent counters with more than a scintilla of probative evidence to raise a genuine issue of material fact.[5] Less than a scintilla of evidence exists when the evidence is " 'so weak as to do no more than create a mere surmise of suspicion. . . . ' " [6] More than a scintilla of evidence exists when the evidence " 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " [7]

After careful review of the record, we find that the trial court erred in striking part of Steinkamp's summary judgment evidence. We also find that Steinkamp's summary judgment evidence showed that more than a scintilla of evidence exists as to her claim for the injuries she sustained from having to undergo surgery without anesthesia, but her summary judgment response contains no evidence linking her thoracic outlet syndrome condition to the broken catheter.

### Standard of Care

In her first issue, Steinkamp asserts that the trial court erred in striking: (1) Vygon's summary judgment evidence, which the trial court seemingly concluded was not properly before the court because that evidence pertained to a portion of the case that had been severed, and (2) deposition excerpts from Steinkamp's expert witness, which the trial court arguably determined was not competent testimony from one qualified to render an expert opinion.

■ Rulings concerning the admission or exclusion of summary judgment evidence are reviewed under an abuse of discretion standard.[8] Mindful of the well-settled principles and rules concerning this standard of review, we turn to the first issue of whether the trial court abused its discretion in striking Vygon's summary judgment evidence as part of Steinkamp's proffered summary judgment evidence.

■ In our recent decision, *Saenz v. Southern Union Gas Co.*,[9] we stated that "[w]hile we do not interpret Rule 166a(i) as requiring a party to needlessly duplicate evidence already found in the court's file, a party must nevertheless insure that the evidence is properly before the trial court for consideration in resolving the motion for summary judgment." [10] Mere existence in the court's file of a response to an earlier summary judgment is not enough.[11] A party achieves the task of ensuring that the evidence is properly before the court either by requesting in the motion that the trial court take judicial notice of the evidence that is already in the record or by incorporating that document or evidence in the party's motion.[12] With regard to incorporation by reference, magic language

3. *See Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432 (Tex.App.—Houston [14th Dist.] 1999, no pet. h.); *Taylor–Made Hose, Inc. v. Wilkerson*, No. 04–97–01025–CV, — S.W.3d ——, 1999 WL 90021, at *2 (Tex. App.—San Antonio Feb.24, 1999, no pet. h.); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.).

4. *Lampasas*, 988 S.W.2d at 432.

5. *Id.*

6. *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983)).

7. *Id.* at 432–33 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.

1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998)).

8. *Ho v. University of Texas at Arlington*, 984 S.W.2d 672, 680 (Tex.App.—Amarillo 1998, pet. filed).

9. 999 S.W.2d 490 (Tex.App.—El Paso 1999, no pet. h.) (publication page references are not available).

10. *Id.*

11. *Id.*

12. *Id.*

is not necessary; it is only necessary that the party makes the court aware of that particular evidence to which the party is referring. In this case, Steinkamp stated in the first paragraph of her response to Arreola and Caremark's summary judgment motion that she was relying in part upon Vygon's summary judgment motion, which necessarily included the attached summary judgment evidence. Additionally, in the body of her motion, Steinkamp referred to certain express portions of Vygon's summary judgment evidence, stating that it was already before the court. Because Steinkamp alerted the court exactly upon what evidence she was relying in her response to the defendants' motion for summary judgment, Steinkamp met the Rule 166a(i) requirement. Thus, Vygon's motion for summary judgment evidence was properly before the trial court, and the trial court abused its discretion in excluding it.

■ With regard to the trial court's exclusion of Steinkamp's expert witness testimony, although the parties dispute whether Dr. Castillo was qualified to render an expert opinion as to the nursing standard of care, our first determination is whether the facts of this case demand that Steinkamp meet her burden of establishing an expert witness at all. In this case, we conclude no expert witness testimony was necessary because the doctrine of *res ipsa loquitur* applied.

■ *Res ipsa loquitur* is used only in certain limited cases where the circumstances surrounding the accident constitute sufficient circumstantial evidence of the defendant's negligence to support such a finding.[13] Specifically, *res ipsa loquitur* applies only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant.[14] The likelihood of other causes need not be completely ruled out, but their likelihood must be " 'so reduced that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant's door.' "[15]

■ Generally, proof of negligence in medical malpractice claims must be established through expert testimony.[16] As another general rule, Texas courts view *res ipsa loquitur* as inapplicable to medical malpractice cases.[17] There is an exception to these general rules, however, that is as well settled as the general rules themselves: where medical negligence is demonstrated by facts that can be evaluated by resort to common knowledge, expert testimony is not required because " 'scientific enlightenment is not essential for the determination of an obvious fact.' "[18] The Medical Liability and Insurance Improvement Act further restricts the application of the doctrine to only those circumstances in which it had been applied before the effective date of the Act.[19] Examples of the *res ipsa loquitur* exception include negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments

---

**13.** *Schorlemer v. Reyes*, 974 S.W.2d 141, 145 (Tex.App.—San Antonio 1998, pet. denied).

**14.** *Id.*

**15.** *Id.* (quoting *Porterfield v. Brinegar*, 719 S.W.2d 558, 559 (Tex.1986)).

**16.** *Arguello v. Gutzman*, 838 S.W.2d 583, 587 (Tex.App.—San Antonio 1992, no writ).

**17.** *Id.* at 587–88.

**18.** *Gannon v. Elliot*, 19 Cal.App.4th 1, 23 Cal. Rptr.2d 86, 89 (3 Dist.1993) (quoting California case law); *see Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex.1990); *Arguello*, 838 S.W.2d at 587; *Wendenburg v. Williams*, 784 S.W.2d 705, 706 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

**19.** *Odak v. Arlington Mem'l Hosp.*, 934 S.W.2d 868, 873 (Tex.App.—Fort Worth 1996, writ denied) (citing TEX.REV.CIV. STAT. ANN. art. 4590i, § 7.01 (Vernon Pamph.1996)).

or sponges within the body.[20] "In such cases the requirement of medical testimony is eliminated, but the necessity of proof of negligence remains."[21]

Our research reveals that the present case is notably dissimilar to that of any other Texas case because this case turns on *leaving* a medical instrument inside the body, while other Texas cases turn on the *use* of the instrument.[22] For example, this case clearly differs from *Haddock v. Arnspiger*,[23] where the Texas Supreme Court held that *res ipsa loquitur* did not apply after the court evaluated the physician's *use* of a mechanical instrument, not the physician's act of unintentionally leaving a broken piece of mechanical instrument inside the patient's body.[24] This case also differs from *Arguello v. Gutzman*,[25] where our sister court, in holding that *res ipsa loquitur* was inapplicable to Arguello's claims, focused only on the physician's *use* of a mechanical instrument, despite Arguello's additional assertion that the physician's act of leaving a foreign object, specifically, a broken piece of that mechanical instrument, inside his body was negligence.[26]

After reviewing other jurisdictions' decisions on the issue of leaving medical instruments inside the patient's body, we find that this case is identical to that of *Vasquenza v. Moraski*.[27] In that case, the plaintiff brought a medical malpractice

20. *Haddock*, 793 S.W.2d at 951. For examples in other jurisdictions, *see Fieux v. Cardiovascular & Thoracic Clinic, P.C.*, 159 Or.App. 637, 978 P.2d 429, 432 (1999) (holding that *res ipsa loquitur* applies when surgeon leaves clamp in patient's chest); *Alex v. Dr. X*, 692 So.2d 499, 506 (La.App. 3 Cir.1997) (recognizing extension of *res ipsa loquitur* to on-call physician's failure to respond to emergency call when he knows or should know that his presence is necessary); *Guillory v. Dr. X*, 679 So.2d 1004, 1009 (La.App. 3 Cir.1996) (adding that negligent violation of statute and/or hospital's bylaws is example of *res ipsa loquitur*); *Bourquin v. Melsungen*, 40 Conn.App. 302, 670 A.2d 1322, 1328 (1996) (finding that *res ipsa loquitur* applies when there is dispute as to whether nurse/anesthetist used anesthetic that surgeon had instructed her not to use or when health care giver administers wrong medications because containers appeared similar), *cert. denied*, 237 Conn. 909, 675 A.2d 456 (Conn.1996); and *Brown v. Meda*, 74 Md.App. 331, 537 A.2d 635, 641 (1988) (noting that *res ipsa loquitur* applies when dentist pulls wrong tooth; when physician leaves unattended patient who has been hit by automobile when possibility of life-threatening internal injuries is obvious; when physician drops scalpel or knife on patient, causing patient to be cut; when physician drops some fluid, causing patient to be burned; or when physicians and hospitals use nonsterile needle when performing biopsy), *aff'd by* 318 Md. 418, 569 A.2d 202 (1990).

21. *Arguello*, 838 S.W.2d at 591 (Chapa, J., dissenting) (quoting *Rayner v. John Buist Chester Hosp.*, 526 S.W.2d 637, 639 (Tex.Civ. App.—Waco 1975, writ ref'd n.r.e.)).

22. *See Boyd v. Chakraborty*, 250 Neb. 575, 550 N.W.2d 44, 48 (1996) (agreeing that expert testimony is required in establishing standard of care for procedure of inserting and extracting catheter when allegations pertain to negligence of physician in fracturing catheter, but finding that issue of whether appellees acted negligently in leaving a fragment of catheter tube inside patient represents separate issue).

23. 793 S.W.2d 948 (Tex.1990) (holding that *res ipsa loquitur* was not applicable because use of flexible colonoscope required extensive training and experience).

24. *Haddock*, 793 S.W.2d at 954; *Arguello*, 838 S.W.2d at 594 (Chapa, J., dissenting).

25. 838 S.W.2d 583 (Tex.App.—San Antonio 1992, no writ). Similar to the present case, Dr. Gutzman was operating on Arguello's knee when the instrument he was using broke and dropped into Arguello's knee. *Id.* at 585. Unable to locate the broken piece through arthroscopic visualization or x-rays, Dr. Gutzman performed an arthrotomy, found the piece, and retrieved it. *Id.*

26. *Id.* at 593 (Chapa, J., dissenting) (stating that it was uncontested that plaintiff was additionally damaged during surgery because physician's instrument broke while being used by physician during procedure, which led to additional, uncontested damages in form of additional, more severe surgical procedure, which was required to remove piece of instrument).

27. No. CV 950548788, 1998 WL 599600 (Conn.Super.Ct. Aug.24, 1998).

suit, claiming damages for the physician's act of leaving the tip of a catheter lodged inside the plaintiff's body.[28] Despite the defendant's argument that the plaintiff's expert witness was not qualified to render an expert opinion, the court held that the plaintiff need not provide expert witness testimony as to the standard of care because leaving a catheter tip inside the patient's body falls within the *res ipsa loquitur* exception to the general rule and is the kind of negligence that "is not so complex as to require expert testimony, nor does it 'present an esoteric or uniquely medical issue.'"[29] This situation is not one in which "'from its nature, expert opinion evidence is indispensable or necessarily essential to the reaching of a conclusion upon a disputed issue as to the cause of a[n] . . . injury[ ] or condition. . . .'"[30]

Although it is unclear how long the catheter piece was left in Steinkamp's body, the present case clearly fits within the common knowledge exception because it involves the act of leaving a part of a medical instrument within a patient's body.[31] The nature of the alleged malpractice and injuries involves Arreola's act of leaving one piece of catheter inside Steinkamp's vein to travel dangerously toward her heart. "[I]t does not take a medical expert to know that a surgical instrument is not supposed to break and remain either in part or whole, inside the body."[32] Further, it is undisputed that the catheter was under Arreola's manage-

ment and control when the catheter broke off in Steinkamp's vein. Thus, we conclude that this case is one of those rare medical malpractice exceptions where *res ipsa loquitur* applies.[33] In such a case, although the necessity of the proof of negligence remains, the requirement of medical testimony as to the standard of care, and the breach of that standard of care, is eliminated.[34] Because this case falls within the exception to the general rule, which eliminates the requirement of medical testimony, the trial court abused its discretion in sustaining the defendants' objection to this testimony on the basis that Dr. Castillo was not qualified to render an expert opinion and abused its discretion in striking this evidence.

■ Because we find that the trial court erred in striking Steinkamp's summary judgment evidence concerning Vygon's summary judgment evidence and Dr. Castillo's deposition testimony, we must next determine whether such error was harmless. Texas Rule of Appellate Procedure 44.1(a) provides that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals."[35]

28. *Id.* at *1.

29. *Id.* at *3 (quoting *Bourquin v. Melsungen,* 40 Conn.App. 302, 316–17, 670 A.2d 1322 (1996), *cert. denied,* 237 Conn. 909, 675 A.2d 456 (1996)).

30. *Id.* at *3 (quoting *Gannon v. Kresge Co.,* 114 Conn. 36, 38, 157 A. 541 (1931)).

31. *Arguello,* 838 S.W.2d at 593.

32. *Id.* at 594 n. 1.

33. In her third amended pleading, Steinkamp pleaded *res ipsa loquitur* with respect to Vygon's defective design of the catheter. Her

pleading continues, however, alternatively or conjunctively, with her medical negligent claims against Arreola. Because the pleading was set forth conjunctively, because Texas Rules of Civil Procedure 45(d) provides that "[a]ll pleadings shall be construed so as to do substantial justice," and because we view summary judgment evidence in the light most favorable to the nonmovant, we find that a *res ipsa loquitur* claim can be maintained for summary judgment purposes as to Arreola and Caremark.

34. *Martin v. Petta,* 694 S.W.2d 233, 239 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.).

35. Tex.R.App. P. 44.1(a).

Here, the defendants' summary judgment motion contended that Steinkamp produced no evidence of standard of care by expert testimony or proximate causation as to the thoracic outlet condition. The parties do not dispute that, as a nurse, Arreola owed a legal duty to her patient, Steinkamp.[36] Vygon's summary judgment evidence, upon which Steinkamp relied and which the trial court excluded, provides a scintilla of probative evidence concerning Arreola's breach of that legal duty. Vygon's evidence consisted of affidavit testimony that expressly supported Steinkamp's assertion that the catheter had been cut, as if sliced by a steel edge, such as a needle, rather than shredded, as Arreola and Caremark assert. Vygon's evidence also included deposition testimony, stating that because of the way the catheter was fractured, it appeared that Arreola "pulled the catheter back while the needle introducer was still in the arm." Vygon's affidavit testimony states that "[t]he event of pulling a catheter/guidewire back against the introducing needle is clearly warned against by Vygon Corporation. In particular, the outside cover of the Vygon Life Vac PICC catheter tray has a warning [which] states: 'The catheter must not be withdrawn back through the needle at any time. This can result in damaging the catheter on the cutting edge of the needle. It can also lead to severing the catheter completely and a resulting catheter embolism.' " Similarly, Dr. Castillo testified in her deposition that "based on the assumption that the catheter was cut and that the nurse was carrying out the procedure and that if the nurse cut the catheter, then she was negligent."

Importantly, despite Steinkamp's request in her live pleading for pain and suffering damages for the surgery without anesthesia, the defendants' motion for summary judgment does not assert that there was no evidence of proximate causation for the surgery without anesthesia, nor do the defendants contend that there was no evidence of pain and suffering damages resulting from the surgery without anesthesia. Rather, the defendants' motion only encompasses the issues of standard of care by expert testimony and proximate causation for the thoracic outlet syndrome allegation. Because a summary judgment cannot grant more relief than requested,[37] and because there is more than a scintilla of probative evidence as to Arreola's breach of legal duty in the excluded evidence above, the trial court's exclusion of Vygon's summary judgment evidence and Dr. Castillo's deposition testimony constituted reversible error as to the damages that Steinkamp arguably suffered when she underwent the surgery without anesthesia. Simply put, with regard to the surgery-without-anesthesia damages, the court's act of excluding Steinkamp's summary judgment evidence probably caused the rendition of an improper judgment.

We sustain Steinkamp's first issue.

### Damages' Thoracic Outlet Syndrome

In her second issue, Steinkamp contends that the trial court erred in granting summary judgment. Because we have already determined that the trial court granted summary judgment only as to the thoracic outlet condition and not the surgery without anesthesia damages, we need only address whether summary judgment was properly granted with regard to the former.

Although we have determined that expert testimony is not required in this *res ipsa* case, to withstand the defendants' no-evidence summary judgment at-

---

36. *See Lunsford v. Board of Nurse Exam'rs,* 648 S.W.2d 391, 394, 395 (Tex.App.—Austin 1983, no writ) (finding that "nurse/patient" relationship exists in Texas and that such relationship creates legal duty for purpose of determining element of negligence).

37. *Chandler v. Chandler,* 991 S.W.2d 367, 392 (Tex.App.—El Paso 1999, pet. filed).

tack, Steinkamp must still meet the standard of proof for causation in a medical negligence case. Thus, Steinkamp had to prove four elements to prevail: (1) a legal duty by the physician/nurse/hospital to act according to applicable standards of care; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury.[38] Arreola and Caremark's motion for summary judgment alleged, among other things, that Steinkamp had no evidence of a causal connection between the breach of care and her thoracic outlet syndrome injury. Causation in a medical negligence case must be shown within a "reasonable medical probability."[39] Mere speculation or conjecture, such as "might have caused" does not raise a fact issue on causation.[40] Moreover, causation in a medical negligence case must be proved by expert testimony.[41]

Reviewing the evidence in the light most favorable to the nonmovant, we find that Steinkamp did not meet her burden on the dispositive issue of causation. Specifically, Steinkamp presented evidence from two doctors that she "may have suffered an isolated deep venous thrombosis" and that "possibly the catheter in her arm that was there for several hours could have acted as a nidus, or a thing that would trigger off clotting with the obstruction...." We cannot hold that this evidence rises to the required level of reasonable medical probability. Indeed, some evidence Steinkamp offered actually negates causation. One of her doctors opined that "I would say that it (the catheter) certainly wasn't the cause.... It was—it could possibly be a cause or it might not be a cause. There's no way that I can say." Additionally, there was testimony that the cause of her thoracic outlet condition could be attrib-

uted to multiple traumas she had sustained, the timing of the clot that precipitated the condition, "possibly the catheter in her arm ..., or a thing that would trigger off clotting...." Because Steinkamp has not established a genuine issue of material fact as to causation in the summary judgment evidence, this issue is overruled.

## CONCLUSION

We affirm the summary judgment as to Steinkamp's damage claim regarding thoracic outlet syndrome. We reverse and remand the remainder of the case.

---

38. *Denton Reg'l Med. Center v. LaCroix,* 947 S.W.2d 941, 950 (Tex.App.—Fort Worth 1997, writ denied).

39. *Campos v. Ysleta Gen'l Hosp., Inc.,* 836 S.W.2d 791, 795 (Tex.App.—El Paso 1992, writ denied).

40. *Id.* at 794–95.

41. *Hart v. Van Zandt,* 399 S.W.2d 791, 792 (Tex.1965); *Greene v. Thiet,* 846 S.W.2d 26, 33 (Tex.App.—San Antonio 1992, writ denied).