Criminal Case Template








COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



JOHN M. YOUNG,

                            Appellant,

v.

FLIPPEN AVIATION, INC.

                            Appellee.

§

§

§

§

§

No. 08-02-00302-CV

Appeal from the

County Court at Law Number 1

of Midland County, Texas

(TC#CC-10294)




MEMORANDUM OPINION

           In his sole issue on appeal, John M. Young argues that the trial court erred in
granting a summary judgment in favor of Flippen Aviation, Inc. We affirm in part and
reverse and remand in part.
Procedural Background
           Flippen Aviation sued Young, claiming that Young owed it $20,834.19 for
repairing his airplane. In accordance with Texas Rule of Civil Procedure 185, Flippen
Aviation attached an affidavit to its petition, stating that the claim is just and true, that it
is due, and that all just and lawful offsets, payments, and credits have been allowed. 
Flippen Aviation also attached a copy of the invoice for the repairs.
           Young’s answer contained a verified denial. See Tex. R. Civ. P. 185. The answer
also raised the affirmative defense of failure of consideration. Specifically, Young
claimed that although Flippen Aviation promised to rebuild the plane’s engine before
Thanksgiving 1998 for $15,000 to $16,000, the repairs were defective and were not
completed until May 1999. Young also filed a counterclaim for breach of contract. He
again alleged that the repairs were defective and were not completed until May 1999. He
sought damages of $23,000; $20,000 representing the fair rental value of the plane for the
time he was deprived of its use and $3,000 representing the amount he paid another party
to remedy the defect.
           Flippen Aviation moved for a traditional summary judgment on its claim and for a
no-evidence summary judgment on Young’s counterclaim. The trial court granted the
motion. Flippen was granted relief in the amount of the invoice, minus an offset of
$1,722, leaving a net recovery of $19,112.19, excluding interest and attorney’s fees.
Summary Judgment Evidence
           It is undisputed that in August 1998, Young made a “gear-up landing,” which
resulted in a “prop strike.” After this incident, Young took the plane to Kermit Steria at
West Winds Aviation to determine if any repairs were needed. Young wanted the work
completed by Thanksgiving. Steria was working on another plane, and Young became
frustrated because Steria was unable to get to his plane.
 

Steria’s Deposition
           Steria testified that a directive by the Federal Aviation Administration requires a
plane’s engine to be inspected after a prop strike occurs. If the inspection reveals damage
to the engine, it must be repaired before it may be put back in service.
           Because he was unable to meet Young’s Thanksgiving deadline, Steria contacted
Glenn Flippen of Flippen Aviation on approximately October 20 to see if he could do the
mandatory inspection. Flippen said that he believed he could complete the inspection in
two or three weeks or by Thanksgiving, but he did not guarantee that he could get it done
by then. Steria understood that it would take longer if damage was found, and he
believed that Young understood that as well.
           When Flippen’s wife came to get the engine, Young happened to be at Steria’s
hangar, and Steria informed him that Flippen was going to do the inspection because he
could not complete it by Young’s deadline. According to Steria, Young said, “okay, you
know, as long as it’s done by Thanksgiving.”
           On November 10, Flippen informed Steria that the engine’s journals were scarred
and that he could not complete the repairs by Thanksgiving. At the end of November,
Flippen informed Steria that the inspection revealed that the cam and lifters were bad, but
everything else had been inspected and was ready for reassembly. Steria then advised
Young that since he was already having these repairs made, it would be a good idea to
overhaul the engine. Flippen had told Steria that he would charge $15,000 to $16,000 for
the overhaul. Young initially did not want to do the overhaul because of the cost. He
believed that he could buy an overhauled engine from the manufacturer for $22,000 to
$23,000 and he would not have to wait for Flippen to do the work. Eventually, however,
Young told Steria “to go ahead” with the engine overhaul, and Steria informed Flippen
that Young had agreed to the overhaul “at that price.” Flippen then said that he would
complete the engine by the first week in January at the latest.
           Over the following months, Flippen encountered numerous difficulties in getting
parts for the engine. By April 1, he received the last part and he completed the work on
April 8. Steria testified that once Flippen received the last part for the engine, he took a
reasonable amount of time to reassemble the engine.
           When Steria received the engine from Flippen, he installed it and took the plane on
a test flight. During the test flight, the engine malfunctioned and the plane almost
crashed. Steria determined that the malfunction was caused by Flippen’s failure to
change a collar. Flippen admitted to him that this was a mistake. Steria obtained the
collar and reassembled the engine. Contrary to Young’s pleadings, Steria testified that he
did not charge Young $3,000 to reassemble the engine; he only charged him $30. This
amount did not reflect the actual amount of labor that was required to fix the defect.
            Steria believed that Flippen’s total bill was going to be between $15,000 and
$16,000. Approximately three days before Flippen completed the work, Steria asked him
if he was still “within budget” and Flippen said that he was. Steria also indicated that
Flippen could have used cheaper cylinders than the ones he used.
Young’s Deposition
           Young testified that Steria did not confer with him before deciding to have Flippen
do the engine inspection. He did not want Flippen to do the work, “but it was obvious it
was too--you know, I didn’t jump up and down and say, ‘Hey, you’re not leaving, put that
engine back.’” Steria told him that Flippen promised to have the plane “ready by
Thanksgiving” and that “the main thing was that he was going to disassemble it, inspect
it, put it back together and have it back over here [by Thanksgiving], because that was the
first thing.” At that time, Flippen did not provide a price estimate; “this was just for an
inspection.”
           Steria later informed him that Flippen had started overhauling the engine without
conferring with Steria. Young stated that he “went through the roof” when he learned
this news. Young told Steria that he would prefer to buy a remanufactured or new engine. 
 He estimated that a factory remanufactured engine would cost between $18,000 and
$20,000 and a new engine would cost between $20,000 and $23,000. Steria advised him
that he probably needed the overhaul and he should let Flippen do it. Steria told Young
that Flippen said the work would cost about $15,000. Steria also informed Young that the
plane would not be ready by Thanksgiving, but that “Flippen had guaranteed it would be
ready by Christmas.”
           Young testified that he never authorized Steria to subcontract the work. Other
than seeing Flippen’s wife take the engine away, Young never had any contact with
Flippen or any of his employees. Young also testified that Steria initially told him it was
going to cost $3,000 to reassemble the engine because of Flippen’s failure to replace the
collar. But Steria later told him that he did not charge anything because “he felt so bad
about the screw-up on this engine and about the time and everything.” Young did not
know whether he actually paid Steria anything for the work.
The Traditional Summary Judgment as to Flippen Aviation’s Claim
Standard of Review
           We apply a de novo standard of review to summary judgments. Bowen v. El Paso
Elec. Co., 49 S.W.3d 902, 904 (Tex. App.--El Paso 2001, pet. denied). We will uphold a
traditional summary judgment if the movant establishes that no material fact issue exists
and that it is entitled to judgment as a matter of law. Id. We view the evidence in the
light most favorable to the respondent. Id.
           When a plaintiff moves for summary judgment, it must conclusively prove its
entitlement to prevail on each element of its cause of action as a matter of law. Thompson
v. Chrysler First Bus. Credit Corp., 840 S.W.2d 25, 28 (Tex. App.--Dallas 1992, no writ). 
But the plaintiff is not under any obligation to negate affirmative defenses. Id. Instead, if
the defendant relies on an affirmative defense, such as failure of consideration, he must
come forward with summary judgment evidence sufficient to raise an issue of material
fact regarding the defense to avoid summary judgment. Brownlee v. Brownlee, 665
S.W.2d 111, 112 (Tex. 1984); Parker v. Dodge, 98 S.W.3d 297, 300-01 (Tex. App.--Houston [1st Dist.] 2003, no pet.); Thompson, 840 S.W.2d at 28; see also Brown v. Clark,
557 S.W.2d 558, 560 (Tex. Civ. App.--Texarkana 1977, no writ) (applying this rule in a
suit on a sworn account).
Failure of Consideration
           In his response to the summary judgment motion and on appeal, Young raises
several arguments, including failure of consideration. The defense of failure of
consideration defeats summary judgment if the respondent alleges facts and presents
evidence that the consideration was not received. Parker, 98 S.W.3d at 301. Young
argues that there was a failure of consideration in this case because the repair and
overhaul of the engine were defective.
           It is undisputed that Flippen’s overhaul of the engine was seriously defective. 
Steria testified that the plane almost crashed when he took it for a test flight and that
Flippen acknowledged that he made a mistake. To fix the problem, Steria had to
disassemble the engine again, install a new part, clean all the parts, and then reassemble it
again. It took him approximately five days to complete this work. This evidence raises a
genuine issue of material fact as to whether the consideration--the proper repair and
overhaul of the engine--was received.
           Flippen Aviation suggests that its defective performance was rendered moot by the
trial court’s allowance of an offset. We disagree.
           In its petition, Flippen Aviation alleged that Young owed it $20,834.19 after all
offsets. In its summary judgment motion, Flippen Aviation continued to claim that
Young owed it $20,834.19. Nevertheless, the trial court did not grant a judgment for this
amount. The court applied an offset, resulting in a judgment of $19,112.19, exclusive of
interest and attorney’s fees. The court explained in the written judgment how it
determined the offset amount:
[T]he Court finds that Defendant claims in his summary judgment response
a delay of “10 to 14 days” in his use of the aircraft in question due to
remedial work done on plaintiff’s repairs, and that plaintiff has stipulated to
an offset for 14 days of use based on defendant’s deposition testimony of
rental value. The Court further finds that Defendant testified that he flew
the aircraft for 300 hours in 1997 and 200 hours in January through August,
1998 (2/3 of that year) which yields a usage average of .82 hours per day, at
a rate stated by defendant of $150.00 per hour.

           Young did not move for summary judgment on his affirmative defense. Therefore,
the trial court was not authorized to grant him any relief based on the defense. See
Gainesville Oil & Gas Co. v. Farm Credit Bank, 795 S.W.2d 826, 828 (Tex. App.--Texarkana 1990, no writ). Young merely relied on the affirmative defense of failure of
consideration to defeat Flippen Aviation’s summary judgment motion. To defeat the
motion, all Young was required to do was raise a fact issue regarding the defense. The
explanation of the offset in the judgment implicitly recognizes that Young raised a fact
issue and further implicitly finds that the repairs and overhaul were defective. In ruling
on a summary judgment motion, the trial court is limited to determining whether a
genuine issue of material fact exists; the court is not authorized to find facts. See IKB
Indus. (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex. 1997). Because a
fact issue exists, the trial court should have denied the summary judgment motion and
allowed a fact finder to determine whether Flippen Aviation’s performance was defective
and if so, whether the defective performance amounted to a complete or only a partial
failure of consideration. See Parker, 98 S.W.3d at 301.
The No-Evidence Summary Judgment as to Young’s CounterclaimStandard of Review
           We will uphold a no-evidence summary judgment if there is no more than a
scintilla of evidence to support the respondent’s claim. Steinkamp v. Caremark, 3 S.W.3d
191, 193-94 (Tex. App.--El Paso 1999, pet. denied). As with a traditional summary
judgment, we view the evidence in the light most favorable to the respondent. Id. at 194.
Respondent’s Burden
           A motion for a no-evidence summary judgment must state the elements as to
which there is no evidence. Tex. R. Civ. P. 166a(i). If the movant complies with this
requirement, “[t]he court must grant the motion unless the respondent produces summary
judgment evidence raising a genuine issue of material fact.” Id. The respondent “is not
required to marshal its proof; its response need only point out evidence that raises a fact
issue on the challenged elements.” Id. 1997 cmt. Thus, a proper no-evidence motion
shifts the burden to the respondent, and the respondent must then direct the trial court to
summary judgment evidence that raises a genuine issue of material fact regarding each
challenged element. Lattrell v. Chrysler Corp., 79 S.W.3d 141, 147-49 (Tex. App.--Texarkana 2002, pet. denied); Roventini v. Ocular Sciences, Inc., 111 S.W.3d 719, 722-23 (Tex. App.--Houston [1st Dist.] 2003, no pet.); Walton v. City of Midland, 24 S.W.3d
853, 858 (Tex. App.--El Paso 2000, no pet.), abrogated on other grounds by In re Estate
of Swanson, 130 S.W.3d 144, 147 (Tex. App.--El Paso 2003, no pet.); Saenz v. Southern
Union Gas Co., 999 S.W.2d 490, 493-94 (Tex. App.--El Paso 1999, pet. denied).
           In his counterclaim for breach of contract, Young asserted that Flippen agreed to
complete the repairs on the engine by Thanksgiving 1998, but did not actually complete
the repairs until May 1999. Young alleged that this delay caused him damages of
$20,000, which was the fair rental value of the plane for the time he was deprived of its
use. Furthermore, Young alleged that the repairs were defective and that Young paid
Steria approximately $3,000 to remedy the defect.
           In the “no-evidence” portion of its summary judgment motion, Flippen Aviation
argued that it was entitled to summary judgment on Young’s counterclaim for breach of
contract “on the ground that there is no evidence that [it] agreed to complete these repairs
within any set time frame, or that Young paid $3,000.00 to remedy any defect in the
repairs.” In his response, Young did not specifically address the no-evidence portion of
the summary judgment motion. He made only one brief reference to his counterclaim in
the part of his response that dealt with his affirmative defense of failure of consideration. 
Young wholly failed to address the two specific elements challenged in the summary
judgment motion. The response did not direct the court to any evidence that Flippen
agreed to complete the repairs by Thanksgiving 1998 or that Young paid Steria $3,000 to
cure the defective repair. Therefore, Young failed to satisfy his burden and the trial court
properly granted summary judgment as to his counterclaim.



Conclusion
           For the reasons stated herein, Young’s issue on appeal is sustained in part and
overruled in part. The trial court’s judgment is reversed insofar as it summarily disposed
of Flippen Aviation’s claim against Young, but is affirmed insofar as it summarily
disposed of Young’s counterclaim against Flippen Aviation. The cause is remanded for
further proceedings consistent with this opinion.
 
                                                                  SUSAN LARSEN, Justice
July 1, 2004

Before Panel No. 1
Larsen, McClure, and Chew, JJ.