

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00199-CV

———————————————

PRINCESS EAGLIN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE
ESTATE OF STARR BRUNSON, DECEASED, Appellant

V.

JONATHAN PURCELL, M.D., Appellee

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. 17-1529-442

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Princess Eaglin, acting on her own behalf and on behalf of Starr Brunson's estate, appeals from the trial court's summary-judgment order that dismissed her suit against Starr's emergency physician, appellee Dr. Jonathan Purcell. Eaglin asserts that the trial court abused its discretion by sustaining Purcell's objections to her proffered summary-judgment evidence and therefore erred by granting summary judgment because she had raised genuine issues of material fact. We conclude that even assuming Eaglin's proffered summary-judgment evidence was competent and should have been considered by the trial court, Eaglin's proffered evidence failed to raise a genuine issue of material fact regarding causation. Accordingly, we affirm the trial court's summary judgment.

## I. BACKGROUND

### A. FACTUAL BACKGROUND

On March 28, 2015, at approximately 3:00 a.m., seven-year-old Starr woke her mother, Eaglin, and told her that she could not breathe. Starr had a history of juvenile asthma;[1] thus, Eaglin gave her a nebulizer treatment and brought her to a nearby hospital's emergency department at 3:48 a.m. Starr presented in respiratory distress with an elevated respiratory rate, wheezing, and an elevated heart rate. Purcell examined Starr and determined she was having a mild asthma attack. Starr told Purcell that she felt like she was having a heart attack. Purcell ordered breathing

---

[1]Starr was taken to the hospital monthly for her asthma.

treatments, a dose of steroids, and a chest x-ray to rule out pneumonia. About one hour after Starr received the medications, Purcell determined that the medications had worked, that Starr was breathing comfortably (she was not tachypneic), and that she was ready for discharge:

> [Starr] was okay to go home. . . . She was smiling. She was breathing comfortably. She had come in with mild accessory muscle use that had resolved. Her respiratory rate had been 36. When she left, it was 18. Her heart rate had come down despite getting a medicine that raises her heart rate, which shows you that she's more comfortable in general. And so everything led [Purcell] to believe that she . . . was already stable for discharge and that she would only continue to get better, and [Purcell] didn't think at all that she would ever come back that day.

At approximately 5:30 a.m., Starr was discharged with instructions to take the steroid for five days, continue the breathing treatments every eight hours, and use her rescue inhaler every six hours as needed.

Eaglin "immediately" dropped off Starr's prescriptions at a pharmacy next door to the hospital, and she and Starr returned home where they slept until approximately 1:00 p.m.—for about six hours. When they woke up, Eaglin drove Starr to get the prescriptions. Starr began to complain that her chest hurt, started vomiting, and became decreasingly responsive. Eaglin pulled the car over, determined that Starr had no pulse, and performed chest compressions for five to ten minutes. Starr was rushed to the hospital in pulseless asystole and was diagnosed with status asthmaticus—a severe asthma exacerbation. She died three days later from an anoxic brain injury after having suffered a cardiopulmonary arrest and acute respiratory failure. Starr's

3

death certificate listed the immediate cause of her death as status asthmaticus; the certificate also listed hypoxic ischemic encephalopathy as a condition leading to the immediate cause of death.

## B.  PROCEDURAL BACKGROUND

On February 23, 2017, Eaglin filed a medical-malpractice suit against Purcell and claimed that he had breached the applicable standard of care by prematurely discharging Starr and by failing to recognize the severity of Starr's initial asthma exacerbation.  Eaglin served Purcell with the expert report and curriculum vitae of Dr. Brian Camazine who opined that Purcell's actions had breached the standard of care, which proximately caused Eaglin's damages: "The result of Dr. Purcell's failure to appreciate Starr's severe exacerbation and need for further admission and treatment directly contributed to the cardiac event that caused Starr's death."  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).  On August 2, Purcell objected to the adequacy of Camazine's qualifications and of his report, pointing to his failure to provide a causal link between Purcell's actions in the emergency department and her death three days later:

> Camazine [failed to] provide a chain of causation that adequately describes the asthma exacerbation on the morning of the 28th, how and why [Starr's] symptoms several hours after discharge stemmed from the same exacerbation rather than a new exacerbation, the progression of her respiratory symptoms to eventual anoxic brain death[,] and how Dr. Purcell's actions were a substantial factor in the progression.

*See id.* § 74.351(*l*), (r)(6).

4

The trial court apparently never ruled on Purcell's objection, and the parties began conducting discovery in earnest. On August 23, 2019, two years after Purcell had objected to Camazine's report and ten days before Camazine's scheduled deposition, Purcell filed a motion for a traditional or no-evidence summary judgment. *See* Tex. R. Civ. P. 166a(b)–(c), (i). In his traditional motion, Purcell argued that Eaglin had not raised a material fact issue that Purcell had acted with willful and wanton negligence as required for the provision of emergency medical care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.153(a). Purcell's no-evidence motion was based on his argument that Eaglin had produced no evidence "to support a breach of an applicable duty, causation, and/or the objective element of wil[l]ful and wanton negligence." Purcell notified Eaglin that the motion would be submitted on September 20, 2019, without an oral hearing.

Eaglin timely responded to the motion and argued that Purcell had not been providing emergency medical care at the time of discharge and that even if the willful-and-wanton standard applied, she had raised more than a scintilla of evidence of causation and of the subjective and objective elements of gross negligence. She attached Camazine's "supplemented" expert report[2] as summary-judgment evidence and heavily relied on it in her response. Eaglin additionally relied on her statement of the general substance of Camazine's opinion included in her expert-witness

---

[2]Eaglin asserted that Camazine's report had been previously amended before the supplemented version, but our record does not contain an amended report.

designation, which Purcell had attached to his summary-judgment motion. *See* Tex. R. Civ. P. 195.2, 195.5(a) (formerly Rule 194.2(f)). Eaglin also attached to her response her deposition testimony, Starr's unauthenticated hospital records, and Starr's death certificate.

On September 17, three days before the summary-judgment submission date, Purcell filed a reply in support of his summary-judgment motion and argued that Camazine's supplemented report was incompetent summary-judgment evidence because it was unsworn and conclusory. That same day, Purcell also filed separate objections to Camazine's supplemented report on the same bases asserted in his summary-judgment reply and moved to strike the report under Rule 166a(f). Tex. R. Civ. P. 166a(f). Purcell additionally objected to the hospital records, the death certificate, and any evidentiary use of Eaglin's expert-witness designation. *See* Tex. R. Civ. P. 193.6(a); Tex. R. Evid. 802, 902(10). Eaglin did not respond to the objections or to the motion.

The summary-judgment motion and Purcell's objections and motion to strike regarding Camazine's report languished. On March 5, 2020, Purcell's counsel contacted the court coordinator and reported to Eaglin's counsel that "it does not appear that we are going to have a ruling any time soon." However, on March 16, the trial court sustained Purcell's objections to Camazine's supplemented report on the basis that it was neither sworn nor supported by a sworn affidavit or declaration. The trial court also sustained Purcell's evidentiary objection to the medical records but

overruled the rest of the objections. The supplemented report and the medical records were stricken. That same day, the trial court granted Purcell's summary-judgment motion without specifying the grounds upon which its order was based.

In her motion for new trial, Eaglin argued that the COVID-19 pandemic should have suspended the trial court's consideration of Purcell's motion and objections, especially because Eaglin's counsel was in quarantine when the trial court sustained some of Purcell's objections and granted summary judgment. Eaglin also requested a continuance to amend her summary-judgment evidence. The trial court denied the motion for new trial.

Now on appeal, Eaglin argues that she was not required to raise a fact issue on willful and wanton negligence and that, even if she were, she met that burden. She also asserts that summary-judgment was improper because she was not given an opportunity to address any deficiencies in Camazine's report before the summary judgment was granted, partially relying on the COVID-19 pandemic to excuse her failure to amend. Finally, she argues that genuine issues of material fact precluded the trial court's summary judgment.

## II. CAUSATION

### A. EAGLIN FAIRLY PRESENTED A CHALLENGE TO CAUSATION

Purcell argues that Eaglin has waived any challenge to the trial court's summary judgment because she fails to raise on appeal all grounds upon which the judgment could have been based. He specifically points to Eaglin's failure to bring a general

7

appellate point challenging the summary judgment as a whole and to Eaglin's subsequent failure to specifically argue, contrary to Purcell's summary-judgment argument, that she had raised genuine issues of material fact regarding causation.

We recognize that there are two general ways to challenge a summary judgment on appeal: (1) list as a separate issue each ground that the movant failed to establish as a matter of law and upon which the trial court might have based its judgment or (2) raise one broad issue challenging the summary judgment as a whole—a *Malooly* issue—and then brief all possible grounds upon which the judgment could have been based. *See Malooly Bros. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Purcell contends that because none of Eaglin's stated appellate issues plainly state that the trial court erred by granting summary judgment and because none specifically attacks causation, we should affirm the judgment on this unchallenged ground.

Clearly, Eaglin does not assert a typical *Malooly* issue. She frames her appeal in terms of three specific issues: (1) whether a willful-and-wanton standard applies to medical treatment provided after a patient is stabilized, (2) whether a fact issue precluded summary judgment even if the willful-and-wanton standard applied, and (3) whether the trial court should have given her until after the pandemic passed to cure any form defects in Camazine's report and should have made its ruling on the objections "clear." But the substance of Eaglin's brief goes beyond her articulation of these three narrow issues. In her substantive briefing of her first issue, Eaglin stresses that she has consistently alleged that Purcell's actions were a producing cause of

8

Starr's death and argues that Camazine's supplemented report "certainly created a fact issue for the jury as to whether Dr. Purcell created the emergency that caused Starr's death."

Although Eaglin's statement of her first issue is framed in specific language that would seem to omit a causation argument, the substance of her briefing fairly includes this subsidiary question. *See* Tex. R. App. P. 38.1(f); *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 215 (Tex. 2020) (per curiam); *Anderson v. Durant*, 550 S.W.3d 605, 617 (Tex. 2018). Because Eaglin fairly included a causation argument in her briefing, she has preserved this summary-judgment ground for our review. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). We see no reason here to find Eaglin's causation argument waived merely because Eaglin's stated issue is not phrased as a standard *Malooly* issue. *See, e.g.*, *St. John*, 595 S.W.3d at 215; *Hagberg v. City of Pasadena*, 224 S.W.3d 477, 481 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Reyes v. Storage & Processors, Inc.*, 86 S.W.3d 344, 348 (Tex. App.—Texarkana 2002) (op. on reh'g), *aff'd*, 134 S.W.3d 190 (Tex. 2004). *See generally Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) ("[W]e note that disposing of appeals for harmless procedural defects is disfavored. . . . Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver. . . . Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible.").

9

## B. Eaglin Did not Raise a Genuine Issue of Material Fact

Purcell sought a no-evidence summary judgment on the basis that Eaglin had failed to establish a material fact issue regarding causation. In our de novo review of the summary judgment, we assay the record evidence in the light most favorable to Eaglin, indulging every reasonable inference and resolving any doubts against the motion. *See Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (per curiam); *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). If Eaglin brought forward more than a scintilla of probative evidence to raise a genuine issue of material fact, the no-evidence summary judgment was in error. *See Smith*, 288 S.W.3d at 424. We must affirm the summary judgment if any of the theories raised in the trial court and preserved for our review are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Cates*, 927 S.W.2d at 626.

Proximate causation is an essential element of a medical-negligence claim and requires evidence, to a reasonable degree of medical probability, that (1) the act or omission was a cause in fact of the injury and (2) the injury was foreseeable. *Windrum v. Kareh*, 581 S.W.3d 761, 777–79 (Tex. 2019). A cause in fact is established when the act or omission "is shown to be a substantial factor in bringing about the harm and without which the harm would not have occurred." *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993); *see Windrum*, 581 S.W.3d at 778–79. Foreseeability is shown through evidence that a person of ordinary intelligence should have anticipated the general danger created by a negligent act or omission. *Stanfield v. Neubaum*, 494

10

S.W.3d 90, 97 (Tex. 2016); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). Both cause-in-fact and foreseeability must be established through expert evidence. *See Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010); *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex. 1965); *Ocomen v. Rubio*, 24 S.W.3d 461, 466 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

To raise a fact issue on causation, Eaglin relies on Camazine's supplemented expert report, which she attached to her summary-judgment response, and specifically on Camazine's assertion that Purcell's premature discharge of Starr with instructions "not to take any medication for an extended period of time unsupervised" caused Starr's cardiac event and eventual death:

> Dr. Purcell instructed the patient to take oral Orapred once per day rather than in two divided doses, which meant she was given instructions not to take any further steroids for the remainder of March 28th. She was additionally instructed to utilize albuterol once every 8 hours, and in reviewing the timeline of her readmission to the hospital at approximately 2:22 p.m. that same day, in conjunction with the instructions given by Dr. Purcell and the travel time to the hospital, it is relatively obvious that Starr likely had no steroids nor any breathing treatments of any kind prior to the cardiac event directly caused by her final asthma exacerbation. Thus, Dr. Purcell's instructions basically resulted in a situation where a patient with an acute asthma exacerbation, who required continuous treatment, was instructed not to treat it at all . . . .
>
> . . . .
>
> . . . If [Starr] had been admitted and given additional systemic steroids (to ensure absorption) as well as additional beta agonists, including continuous nebs, I have no doubt that she would have survived this "**mild asthma exacerbation**".

11

. . . .

. . . During a severe asthma attack, the way the body normally processes respiratory gases in the alveoli is impaired. This leads to lower oxygen levels and higher carbon dioxide levels in the blood, which, in extreme cases, can cause coma and death. Asthma also creates air trapping in the lungs, a condition that causes increased pressure in the chest. This can cause lung collapse and even cardiac arrest. This is likely the medical explanation as to how Starr went into arrest after Dr. Purcell's discharge.

. . . .

. . . I have personal experience with treating patients in situations that [are] virtually exact to Starr's, and I find the medical causation, supported by the medical records and death certificate signed by her attending physician (also an emergency room practitioner) to support the obvious fact that Starr's untreated severe asthma resulted in a cardiac arrest that directly led to brain death.

In his conclusion, Camazine opined that the proximate cause of Starr's death was Purcell's decision to prematurely discharge Starr and that his opinion was "based upon reasonable medical probability."

We conclude that Camazine's report, even assuming its form defects were not fatal, was conclusory as to causation and did not raise a genuine issue of material fact. *See IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 803 (Tex. 2004). Although Camazine attempted to tie Starr's death to Purcell's earlier decision to discharge Starr and to his discharge instructions, he failed to explain how these alleged breaches caused Starr's subsequent exacerbation and cardiac event. He merely states that they did, which does not establish a causal link. *See Windrum*, 581 S.W.3d at 769. Indeed, the summary-judgment evidence showed that Starr was stable when she

was discharged and that she went home and slept without incident for approximately six hours before suffering a second, separate exacerbation and a cardiac event on the way to the pharmacy. Further, Camazine's opinion is based on his supposition of the "likely" medical events that led to Starr's death, which is mere guesswork that cannot raise a genuine issue of material fact. *See IHS Cedars*, 143 S.W.3d at 803; *Thomas v. Farris*, 175 S.W.3d 896, 900–01 (Tex. App.—Texarkana 2005, pet. denied); *Steinkamp v. Caremark*, 3 S.W.3d 191, 199 (Tex. App.—El Paso 1999, pet. denied). Camazine's report was no evidence of a substantial cause-in-fact or of foreseeability; thus, the trial court did not err by granting Purcell judgment as a matter of law on this basis. *See, e.g., Knox v. Rana*, No. 02-16-00086-CV, 2016 WL 6803189, at *4 (Tex. App.—Fort Worth Nov. 17, 2016, no pet.) (mem. op.); *DeLarosa v. Stokes*, No. 03-12-00125-CV, 2012 WL 3600874, at *7 (Tex. App.—Austin Aug. 17, 2012, no pet.) (mem. op.); *Thomas*, 175 S.W.3d at 899–901; *Steinkamp*, 3 S.W.3d at 199.

## III. CONCLUSION

Although Eaglin has fairly presented her argument that genuine issues of material fact regarding causation prevented the trial court's no-evidence summary judgment on her medical-negligence claim, the evidence she relies on is conclusory and, thus, is no evidence. We do not address Eaglin's arguments directed to her inability to address the form defects in Camazine's report based on the pandemic because even if the trial court erred by striking the report based on Purcell's form objection, the report did not raise a genuine issue of material fact on an essential

element of her claim. We also need not address Eaglin's attacks to the applicable standard of care because no matter what standard applies, Eaglin has failed to proffer any evidence of causation. Thus, we overrule Eaglin's issues and affirm the trial court's summary-judgment order. *See* Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 14, 2021