Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



COMMUNITY INITIATIVES, INC.,

                            Appellant,

v.

CHASE BANK OF TEXAS,
NATIONAL ASSOCIATION; AL
MARTINEZ-FONTS; BANK OF
AMERICA, NATIONAL
ASSOCIATION; DAVE GRAHAM;
NORWEST BANK EL PASO,
NATIONAL ASSOCIATION; WELLS
FARGO & COMPANY; AND
NATHAN E. CHRISTIAN,

                            Appellees.

§

§

§

§

§

No. 08-02-00527-CV

Appeal from the

168th District Court 

of El Paso County, Texas

(TC#99-3610)




O P I N I O N
           Community Initiatives, Inc. brings this appeal from a no-evidence summary
judgment. We affirm.
Factual and Procedural Background
           In 1998, Raymond Caballero formed Count Me In, Inc. (CMI) with the purpose of
increasing voter participation. CMI later changed its name to Community Initiatives, Inc.
(CI). Also in 1998, Mary Hull Caballero and Texas Senator Eliot Shapleigh conceived of
an organization called Community Scholars (CS) that would enlist students to research
public policy issues. After CMI changed its name to CI, CI became an umbrella
organization that encompassed both the CMI program and the CS program.
           The CS program was well funded; the CMI program was not. Therefore, a CI
board member, Richard Fleager, began discussions with Wesley Jurey, the president of
the Greater El Paso Chamber of Commerce, attempting to persuade the Chamber to assist
in fund-raising for CMI. Although the parties disagree about the nature and extent of the
commitment the Chamber made to CMI, it is undisputed that on June 7, 1999, the
Chamber sent a letter and pledge form to its members, soliciting donations for CMI. The
pledge form stated that CMI was a project of CI and requested that contributions be
remitted to CI.
           On June 15 and June 18, 1999, CS students interviewed representatives of Wells
Fargo and Chase Bank regarding their banking practices.


 On June 23, 1999, a CS
student sent written questions to Bank of America. The students’ questions were
designed to reveal how the banks’ business, charitable, and lending practices affected the
local economy. Years earlier, Raymond Caballero had asked similar questions of local
banks and had encouraged local institutions to consider the banks’ answers in deciding
where to make their deposits.
           Al Martinez-Fonts was the chairman and CEO of Chase. On or about June 18,
1999, having received the Chamber’s fund-raising letter and having been advised of the
CS students’ questions, Martinez-Fonts called Jurey. Noting that the pledge form
requested that contributions be remitted to CI, Martinez-Fonts asked Jurey about the
connection among CI, CMI, and CS. He told Jurey that he would be inclined to
contribute to CMI, but he did not want his contribution to go to CS.
           Jurey called Fleager to get the answers to Martinez-Fonts’s questions. According
to Fleager, Jurey also asked him whether CI was investigating banks. Fleager was not
sure how to respond to the funding questions. He knew that funds donated to CMI were
kept separate from funds donated to CS, but he also knew that there was an outstanding
loan from CS to CMI. It was therefore possible that funds donated to CMI could end up
with CS if CMI used the funds to repay the loan.
           Fleager does not recall whether he informed Jurey that CMI and CS funds were
kept separate. According to Jurey, Fleager called him back the next day and told him that
any funds donated to CMI would be used only for CMI, but that the CS and CMI
accounts were not segregated. Jurey conveyed this information to Martinez-Fonts. Jurey
also called David Graham to advise him of his conversations with Fleager and Martinez-Fonts. Graham was the Chamber’s chairman of the board and also president of the El
Paso branch of Bank of America. Graham suggested that they convene a meeting of the
Chamber’s personnel committee to discuss the issues raised by these conversations.
           In the meantime, Martinez-Fonts spoke with Graham and Nathan Christian about
the questions being asked by the CS students. Christian was the regional manager of
Wells Fargo. Martinez-Fonts also discussed the CS students with Rick Ybarra, a Chase
employee who also served on CI’s board. Based on Martinez-Fonts’s notes dated June
22, 1999, it appears that Ybarra told Martinez-Fonts that CMI and CS “keep books
separate by internal ledgers.”
           Fleager discussed the questions posed by Jurey with Raymond Caballero. Upon
learning that CS was researching the banks’ practices, Fleager became concerned that the
research could hamper CI’s ability to raise money for CMI from the banks. Fleager then
called Stuart Schwartz, CI’s president. According to Schwartz, Fleager advised him that
there was a “problem” with the Chamber’s fund-raising efforts. Fleager and Schwartz
thought the problem could be solved by separating CS and CMI. Fleager discussed the
possible separation with Jurey, who suggested that CMI could become part of the
Chamber Foundation. On or about June 22, 1999, Fleager, Schwartz, and Jurey met to
discuss the specifics of moving CMI to the Chamber Foundation.
           That afternoon, the Chamber’s personnel committee met. The personnel
committee included Graham, as chairman of the board, and Christian, as immediate past
chairman of the board. Fleager and Martinez-Fonts, who was chairman of the Chamber
Foundation, were also present. The plan to move CMI to the Chamber Foundation was
discussed at the meeting. According to Fleager, Martinez-Fonts stated that his concern
was that he did not want to make a donation to CMI and later find out that the money
actually went to CS. Fleager assured him that CMI and CS kept their funds separate, but
he also mentioned the loan from CS to CMI.
           Also at the meeting, Jurey presented the committee with two proposed letters,
dated June 22, 1999. One of the letters was drafted in contemplation of CMI becoming
part of the Chamber Foundation and advised Chamber members of that fact. The other
letter advised members that the Chamber had just learned that CMI and CS were both
programs of CI and that CS had been “investigating area banks.” The letter stated, “It is
also our understanding that funds have been ‘loaned’ between the programs,” that “we
cannot assure you that your funds will be used exclusively for ‘Count Me In,’ and that the
Chamber has withdrawn its endorsement of the program . . . .” Jurey faxed a copy of this
letter to Martinez-Fonts before the meeting. Martinez-Fonts testified that he told Jurey he
did not think the Chamber should send the letter. It is undisputed that neither letter was
sent to Chamber members. After the personnel committee meeting, the Chamber took no
more action regarding CI, CMI, or CS. The Chamber did not withdraw the letter that it
had already sent, but it also did not assist CMI with any more fund-raising efforts.
           The day after the personnel committee meeting, CI’s board held an emergency
meeting and voted to transfer CMI to the Chamber Foundation. Soon afterwards, several
members of the board, including Schwartz and Fleager, resigned. Schwartz and Fleager
resigned because Raymond Caballero made it clear that he did not approve of the board’s
decision to transfer CMI to the Chamber Foundation. A week later, the remaining board
members reversed their previous votes and decided not to transfer CMI to the Chamber
Foundation.
           In 2000, CS became a separate nonprofit corporation. CMI remains with CI, but it
has no staff and only a skeletal board of directors.
           CI brought this suit, asserting several causes of action against Chase, Wells Fargo,
Bank of America, Martinez-Fonts, Christian, and Graham. The defendants all filed no-evidence summary judgment motions, which were granted by the trial court.
Appropriateness of No-Evidence Summary Judgment
           In its third issue, CI argues that a no-evidence summary judgment was not
appropriate under the circumstances of this case because a sufficient time for discovery
had not passed and because the Appellees’ motions failed to specify which elements of
CI’s claims were lacking.
           No-evidence summary judgments are authorized by Rule 166a(i) of the Texas
Rules of Civil Procedure, which provides:
After adequate time for discovery, a party without presenting summary
judgment evidence may move for summary judgment on the ground that
there is no evidence of one or more essential elements of a claim or defense
on which an adverse party would have the burden of proof at trial. The
motion must state the elements as to which there is no evidence. The court
must grant the motion unless the respondent produces summary judgment
evidence raising a genuine issue of material fact.

No Abuse of Discretion
           Assuming without deciding that CI did not waive its complaint on inadequate time
for discovery,


 we nevertheless find no grounds for disturbing the trial court’s conclusion
on this issue. We review the trial court’s decision for abuse of discretion. Gourrier v.
Joe Myers Motors, Inc., 115 S.W.3d 570, 573 (Tex. App.--Houston [14th Dist.] 2002, no
pet.).
           Whether there has been an adequate time for discovery is case specific. Tempay,
Inc. v. TNT Concrete & Const., Inc., 37 S.W.3d 517, 520-22 (Tex. App.--Austin 2001,
pet. denied). To determine whether an adequate time has elapsed, courts consider the
following non-exclusive factors: (1) the nature of the suit; (2) the nature of the evidence
necessary to controvert the summary judgment motion; (3) the length of time the case has
been active in the trial court; (4) the length of time the motion has been on file; (5) the
amount of discovery that has already taken place; (6) whether the movant has requested
stricter discovery deadlines; and (7) whether the discovery deadlines are specific or
vague. Id. at 522 & n.8. Rule 166a(i) does not require that discovery be completed
before a no-evidence motion is filed. Speciality Retailers, Inc. v. Fuqua, 29 S.W.3d 140,
145 (Tex. App.--Houston [14th Dist.] 2000, pet. denied). But the rule contemplates that
the nonmovant will have a sufficient opportunity to conduct discovery. Tempay, 37
S.W.3d at 521. Therefore, a party should not be able to abuse the discovery process by
withholding key evidence and then use the resulting lack of evidence to obtain a summary
judgment. Id.; Specialty Retailers, 29 S.W.3d at 145.
           This suit was commenced in October 1999. After being removed to federal court,
it was remanded back to state court in March 2000. The Appellees filed motions to stay
the state court proceedings pending their appeal of the remand order. The record does not
contain a ruling on these motions, but it appears that discovery did not commence in
earnest until March 2001. That month, the trial court issued a scheduling order that
required all discovery requests and deposition notices to be served by November 1, 2001. 
The summary judgment deadline was set for November 2, 2001. Trial was set for January
28, 2002. On the Appellees’ motion, the scheduling order and trial setting were vacated
in October 2001. The next month, the court set a trial date of September 30, 2002. The
Appellees filed their motions for summary judgment in July 2002, and their supplemental
motions, addressing the business disparagement claim, in August 2002. The court heard
the original summary judgment motions on August 15, 2002, and the supplemental
motions on September 12, 2002.
           CI argues that “procedural wrangling” consumed most of its time and that it
therefore did not have a sufficient opportunity to conduct discovery. The record reflects
that both sides filed motions to compel certain discovery and that the parties took some
discovery disputes to the trial court. CI points out that its deposition of Graham had to be
stopped for purposes of filing a motion to compel because Graham refused to answer
certain questions. CI acknowledges, however, that Graham’s deposition was completed
before the summary judgment motions were filed.
           In addition to deposing Graham, CI also deposed Christian and Martinez-Fonts, as
well as Fleager, Jurey, and Schwartz. The Appellees deposed the Caballeros. All of
these depositions, along with exhibits and other documents, were attached to CI’s
response to the summary judgment motions. Although CI asserted in its summary
judgment response that it had been unable to depose two witnesses, CI has not established
that it exercised diligence in obtaining the depositions. CI noticed the deposition of one
of these witnesses, Rick Ybarra, along with five other witnesses, for April 14, 2000. CI
eventually deposed the other five witnesses, and the record does not reflect why Ybarra
was never deposed. As for the other witness mentioned in CI’s response, Gayle Ray, CI
does not cite anything in the record to show that it ever noticed her deposition.
           In reference to the factors listed above, the nature of this suit and the summary
judgment motions required a fact-intensive response. The motions were only on file for a
minimal length of time. There is no indication that the Appellees had requested stricter
discovery deadlines; instead, they obtained an order vacating the deadlines that had been
set. The court’s last order setting a trial date stated that discovery was to be completed
pursuant to a “level 2” discovery control plan, although this suit was filed under “level 3.” 
 See Tex. R. Civ. P. 190.1-190.4. All of these factors suggest that an adequate time for
discovery had not passed.
           However, this case had been on file for almost three years when the summary
judgment was granted, and discovery had been actively pursued for at least a year and a
half, with a significant amount of discovery having been obtained. The summary
judgment motions were filed just two months before the trial setting. There is nothing in
the record to show that the Appellees were able to withhold key evidence. And, as noted
above, CI has not established that the evidence it had not obtained would be material. 
Under these circumstances, the trial court did not abuse its discretion in concluding that
an adequate time for discovery had passed. 
The Requirement of Specificity
           CI argues that the trial court erred in granting summary judgment because the
defendants’ motions failed to specify the elements as to which there is no evidence. CI
contends that because the motions asserted that there was no evidence to support each
element of every one of its claims, the motions were in practical effect conclusory and
general no-evidence challenges.
           Rule 166a(i) requires the movant to “state the elements as to which there is no
evidence.” The comment to the rule states, “The motion must be specific in challenging
the evidentiary support for an element of a claim or defense; paragraph (i) does not
authorize conclusory motions or general no-evidence challenges to an opponent’s case.”
           The purpose of the specificity requirement is to provide the opposing party with
fair notice of the matters on which it must produce some evidence. See Dodd v. City of
Beverly Hills, 78 S.W.3d 509, 513 (Tex. App.--Waco 2002, pet. denied). The motion
does not have to include a specific attack on the evidentiary components that make up an
element of a claim. Dominguez v. Payne, 112 S.W.3d 866, 868 (Tex. App.--Corpus
Christi 2003, no pet.); In re Mohawk Rubber Co., 982 S.W.2d 494, 497-98 (Tex. App.--Texarkana 1998, orig. proceeding). Instead, it must only “state the elements as to which
there is no evidence.” Tex. R. Civ. P. 166a(i); compare Oasis Oil Corp. v. Koch Ref. Co.,
60 S.W.3d 248, 255 (Tex. App.--Corpus Christi 2001, pet. denied) (holding that motion
was insufficient because it merely challenged “other elements”), Weaver v. Highlands
Ins. Co., 4 S.W.3d 826, 829 n.2 (Tex. App.--Houston [1st Dist.] 1999, no pet.) (holding
that motion was insufficient because it did not specifically allege that the plaintiff lacked
evidence or challenge a particular element of the plaintiff’s claim), and Abraham v.
Ryland Mortgage Co., 995 S.W.2d 890, 892 (Tex. App.--El Paso 1999, no pet.) (holding
that motion was insufficient because it made no reference to any element of the plaintiff’s
claim or any reference to any specific allegation in the plaintiff’s petition), with Baker v.
Gregg County, 33 S.W.3d 72, 77 (Tex. App.--Texarkana 2000, no pet.) (holding that
motion that listed the plaintiff’s claims and stated the elements that were lacking in each
claim was sufficient), and Hight v. Dublin Veterinary Clinic, 22 S.W.3d 614, 623 (Tex.
App.--Eastland 2000, pet. denied) (holding that motion that listed the elements of
negligence and stated that plaintiffs “cannot provide evidence to support any of the
aforementioned elements” was sufficient). Moreover, nothing in rule 166a(i) or its
comment forbids a defendant from challenging every element of the plaintiff’s claims, as
long as each element is distinctly and explicitly challenged. See Timothy Patton,
Summary Judgments in Texas, Practice, Procedure and Review § 5.03[2][b]
(2003); see also Gourrier, 115 S.W.3d at 574 (challenge to forty-one elements or
combinations of elements).
           All the summary judgment motions in this case meet the specificity requirement. 
The motions list the elements of each cause of action and specifically identify the
elements as to which there is no evidence. Additionally, the motions are supported by
citations to applicable cases and statutes.
           CI argues that the motions improperly required it to marshal its evidence. See
Tex. R. Civ. P. 166a(i) cmt. (stating that the nonmovant is not required to marshal its
proof). We disagree. To marshal one’s evidence is to arrange all of the evidence in the
order that it will be presented at trial. Saenz v. Southern Union Gas Co., 999 S.W.2d 490,
493-94 (Tex. App.--El Paso 1999, pet. denied). All CI had to do to defeat the summary
judgment motions was to point out some evidence that raises a fact issue on each of the
challenged elements; it did not have to present all its evidence in the order that it would
be presented at trial.
           CI asserts that Chase and Wells Fargo attempted to comply with the specificity
requirement in their reply briefs, but CI did not have enough time to respond to the
specific evidentiary challenges raised in the reply briefs because they were filed only one
day before the summary judgment hearing. CI argues that because these replies constitute
the only proper motions for summary judgment, they should have been filed twenty-one
days before the hearing. See Tex. R. Civ. P. 166a(c) (“[T]he motion . . . shall be filed and
served at least twenty-one days before the time specified for hearing.”).
           The record does not reflect that CI made this argument to the trial court. 
Therefore, it is not preserved. See Tex. R. App. P. 33.1(a)(1); see also Alaniz v. Hoyt, 105
S.W.3d 330, 339 (Tex. App.--Corpus Christi 2003, no pet.); Knapp v. Eppright, 783
S.W.2d 293, 296 (Tex. App.--Houston [14th Dist.] 1989, no writ).
           In any event, there is no deadline for filing a reply to a summary judgment
response, and a reply may be filed up until the day of the hearing. See Alaniz, 105 S.W.3d
at 339; Callaghan Ranch, Ltd. v. Killam, 53 S.W.3d 1, 4 (Tex. App.--San Antonio 2000,
pet. denied); Wright v. Lewis, 777 S.W.2d 520, 522 (Tex. App.--Corpus Christi 1989, writ
denied). We agree with CI that a movant may not use a reply brief to meet the specificity
requirement or to assert new grounds for summary judgment. See Callaghan, 53 S.W.3d
at 4; see also Sams v. N.L. Indus., 735 S.W.2d 486, 487-88 (Tex. App.--Houston [1st
Dist.] 1987, no writ) (holding that because a reply containing two additional grounds was
essentially a new motion for summary judgment, the nonmovant was entitled to twenty-one days’ notice and a hearing before summary judgment could be granted on the new
grounds). In this case, however, the reply briefs do not assert new grounds for summary
judgment and, as we explained above, the motions for summary judgment satisfied the
specificity requirement. The reply briefs merely reply to CI’s summary judgment
evidence and arguments. CI’s third issue is overruled.
Exclusion of Summary Judgment Evidence
           In its second issue, CI argues that the trial court erred in sustaining the Appellees’
objections to its summary judgment evidence and in excluding essentially all of its
evidence.
Waiver
           A basic tenet of appellate procedure is that appellate courts do not generally
consider complaints not raised in the trial court. See Tex. R. App. P. 33.1(a)(1). 
Therefore, to preserve error from a ruling that excludes evidence, the complaining party
must inform the trial court of the purpose for which the evidence is offered and the
reasons why the evidence is admissible. In re C.Q.T.M., 25 S.W.3d 730, 737 (Tex. App.--Waco 2000, pet. denied); Melendez v. Exxon Corp., 998 S.W.2d 266, 274 (Tex. App.--Houston [14th Dist.] 1999, no pet.); Vandever v. Goettee, 678 S.W.2d 630, 635 (Tex.
App.--Houston [14th Dist.] 1984, writ ref’d n.r.e.). When the record is silent as to what
position the complaining party took at trial, it is impossible for a reviewing court to
determine whether the trial court abused its discretion by excluding evidence. Estate of
Veale v. Teledyne Indus., Inc., 899 S.W.2d 239, 243 (Tex. App.--Houston [14th Dist.]
1995, writ denied).
           Summary judgment procedure incorporates the tenet that a complaint must first be
presented to the trial court: “Issues not expressly presented to the trial court by written
motion, answer or other response shall not be considered on appeal as grounds for
reversal.” Tex. R. Civ. P. 166a(c). Accordingly, to preserve complaints regarding the
exclusion of summary judgment evidence, the proponent must inform the trial court of the
purposes for which the evidence was offered and the reasons why it was admissible. See
Brooks v. Sherry Lane Nat’l Bank, 788 S.W.2d 874, 878 (Tex. App.--Dallas 1990, no
writ) (holding that the appellant waived her argument that the trial court erred by
sustaining the appellee’s objections to her summary judgment affidavit because she did
not object in the trial court); see also Mangione v. Gov’t Personnel Mut. Life Ins. Co., No.
04-01-00655-CV, 2002 WL 1677457, at *4-*5 (Tex. App.--San Antonio July 24, 2002,
pet. denied) (not designated for publication) (agreeing with Brooks).
           Although CI specifies in its appellate brief the purposes for which the evidence
was offered and the reasons why it was admissible, the record does not reflect that CI
apprised the trial court of these arguments. Therefore, the arguments are not preserved. 
Harmless Error
           We review a trial court’s evidentiary rulings in a summary judgment case for abuse
of discretion. Steinkamp v. Caremark, 3 S.W.3d 191, 194 (Tex. App.--El Paso 1999, pet.
denied). A trial court’s decision to exclude summary judgment evidence will not result in
reversal unless the appellant was harmed by the decision. See id. at 197. In other words,
we cannot reverse unless the ruling probably caused the rendition of an improper
judgment. Id.; Tex. R. App. P. 44.1(a)(1).
           We have considered all the evidence cited by CI in its brief, including the evidence
that was excluded by the trial court. As explained below, we conclude that this evidence
fails to raise a genuine issue of material fact regarding at least one element of each of CI’s
claims. Therefore, even if the propriety of the trial court’s evidentiary rulings had been
preserved for review and even if those rulings were an abuse of discretion, the rulings
were harmless and not reversible.
           CI’s second issue is overruled.
Review of the Summary Judgment Evidence 
           In its first issue, CI argues that the trial court erred in granting summary judgment
because there is more than a scintilla of evidence to support its claims for tortious
interference with contract, tortious interference with prospective business relations,
business disparagement, civil conspiracy, and exemplary damages.
Standard of Review
           We apply a de novo standard of review to summary judgments. Bowen v. El Paso
Elec. Co., 49 S.W.3d 902, 904 (Tex. App.--El Paso 2001, pet. denied). Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same
legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in
reviewing a directed verdict. Id. at 904-05; Wyatt v. Longoria, 33 S.W.3d 26, 31 (Tex.
App.--El Paso 2000, no pet.). A no-evidence summary judgment is improper if the
nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of
material fact. Forbes, Inc. v. Granada Biosciences, Inc., ___ S.W.3d ___, ___, 2003 WL
22999362, at *4 (Tex. 2003); Steinkamp, 3 S.W.3d at 194. More than a scintilla of
evidence exists if the evidence would allow reasonable and fair-minded people to differ in
their conclusions. Forbes, ___ S.W.3d at ___, 2003 WL 22999362, at *4; Steinkamp, 3
S.W.3d at 194. Less than a scintilla of evidence exists when the evidence is so weak as to
do no more than create a mere surmise or suspicion of a fact. Forbes, ___ S.W.3d at ___,
2003 WL 22999362, at *4; Steinkamp, 3 S.W.3d at 194. We view the evidence in the
light most favorable to the nonmovant. Forbes, ___ S.W.3d at ___, 2003 WL 22999362,
at *4; Steinkamp, 3 S.W.3d at 194. When, as here, the trial court grants a summary
judgment without specifying its reasons, we must affirm if any of the reasons advanced in
the motion are meritorious. Wyatt, 33 S.W.3d at 30.
Tortious Interference With Contract
           The elements of tortious interference with contract are: (1) the existence of a
contract subject to interference; (2) an act of interference that was willful and intentional;
(3) the act was a proximate cause of the plaintiff’s damages; and (4) actual damages or
loss occurred. Juliette Fowler Homes, Inc. v. Welch Assocs., 793 S.W.2d 660, 664 (Tex.
1990). The first element requires the existence of a valid contract. Id. Although an
unenforceable contract may serve as the basis for a tortious interference claim, a void
contract may not. Id. This Court has held that a contract that is not supported by
consideration is void and therefore may not serve as the basis for a tortious interference
claim. Hill v. Heritage Res., Inc., 964 S.W.2d 89, 115 (Tex. App.--El Paso 1997, pet.
denied).
           CI asserts that the Appellees interfered with a contract between it and the Chamber
under which the Chamber would assist CI with fund-raising. In its summary judgment
response, CI did not direct the trial court to any evidence of consideration for the
purported contract. This failure alone is sufficient to support the summary judgment on
this cause of action. See Walton v. City of Midland, 24 S.W.3d 853, 858 (Tex. App.--El
Paso 2000, no pet.), overruled on other grounds by In re Estate of Swanson, 130 S.W.3d
144, 147 (Tex. App.--El Paso 2003, no pet.); see also Tex. R. Civ. P. 166a(i) (“The court
must grant the motion unless the respondent produces summary judgment evidence
raising a genuine issue of material fact.”). In its appellate brief, CI claims that in
exchange for the Chamber’s promise to assist with fund-raising, “CI agreed to use any
funds received solely to support CMI, a commitment which benefitted the Chamber and
its business members.”
           Fleager had several meetings with Jurey to discuss whether the Chamber would
assist CI with fund-raising. The Chamber sent the fund-raising letter on June 7, 1999. 
On June 15, 1999, more than a week after the letter had already been sent, CI’s board
passed a resolution providing that CI would honor donors’ requests to designate that their
donations be used for a particular purpose. CI argues that these facts are circumstantial
evidence creating an inference that the board resolution was consideration for the
Chamber’s promise to assist CI with fund-raising. We disagree.
           Consideration is a bargained-for exchange of promises. Fed. Sign v. Tex. Southern
Univ., 951 S.W.2d 401, 408 (Tex. 1997), overruled on other grounds by Gen. Servs.
Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001); Roark v.
Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex. 1991). It consists of benefits and
detriments to the contracting parties. Fed. Sign, 951 S.W.2d at 409. The detriments must
induce the parties to make the promises and the promises must induce the parties to incur
the detriments. Id.
           CI does not cite any evidence that the Chamber bargained for the board resolution
or that the Chamber’s promise to assist in fund-raising induced CI to pass the resolution. 
Although Jurey’s testimony indicates that the Chamber’s motive for helping CI was to
encourage El Pasoans to vote so the city would get more attention from the state and
federal governments, his testimony does not mention the board resolution. In fact, his
testimony indicates that he did not even know about the resolution, because he stated that
Fleager told him the CMI and CS accounts were not segregated. The only testimony
regarding the resolution came from Fleager. His testimony does not in any way link the
resolution to the Chamber’s promise to assist in fund-raising. He also made clear that the
resolution was not related to the Appellees’ inquiries about whether money donated to
CMI might go to CS.
           Although circumstantial evidence may be used to establish a fact, “we are not
empowered to convert mere suspicion or surmise into some evidence.” Browning-Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). At most, the evidence cited by CI would
create only a surmise or a suspicion that the board resolution was consideration for the
Chamber’s promise to assist in fund-raising. See Forbes, ___ S.W.3d at ___, 2003 WL
22999362, at *4; Steinkamp, 3 S.W.3d at 194. As the supreme court has stated, “[S]ome
suspicion linked to other suspicion produces only more suspicion, which is not the same
as some evidence.” Browning-Ferris, 865 S.W.2d at 927.
           We conclude that CI failed to point to more than a scintilla of evidence that a
contract subject to interference existed. Accordingly, the trial court did not err in granting
summary judgment on CI’s claim for tortious interference with contract.
Tortious Interference with Prospective Business Relations
           The elements of tortious interference with prospective business relations are: (1) a
reasonable probability that the parties would have entered into a contractual relationship;
(2) an independently tortious or unlawful act by the defendant that prevented the
relationship from occurring; (3) the defendant did the act with a conscious desire to
prevent the relationship from occurring or with knowledge that the interference was
certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff
suffered actual harm or damage as a result of the interference. Ash v. Hack Branch
Distrib. Co., 54 S.W.3d 401, 414-15 (Tex. App.--Waco 2001, pet. denied). To satisfy the
second element, the plaintiff must prove that the defendant’s conduct would be actionable
under an independent tort, but need not prove all the elements of the independent tort. 
Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001). For example, the
supreme court has stated that a plaintiff may recover for tortious interference from a
defendant who makes fraudulent statements about the plaintiff to a third party, without
proving that the third party was actually defrauded. Id.
           CI asserts that the Appellees engaged in independently tortious conduct by
spreading false information about whether CI was capable of maintaining separate
accounts between CMI and CS. CI argues that although Ybarra had informed Martinez-Fonts that CMI and CS kept separate accounts, the Appellees told Jurey that the
programs’ failure to keep separate accounts was a “problem.” CI relies on Jurey’s
proposed letter stating that funds were loaned between the two programs and that the
Chamber could not assure its members that donations would be used solely by CMI. CI
argues that because Jurey drafted this letter after Martinez-Fonts inquired about the
relationship between CMI and CS, one can infer that Martinez-Fonts and the other
Appellees made false statements to Jurey regarding the existence of separate accounts.
           The record does not support CI’s arguments. First, the record reflects that
Martinez-Fonts got the information about separate accounts from Ybarra on June 22,
which was also the day of the personnel committee meeting and the day Jurey drafted the
letters. Jurey testified that Jim Haines, the chairman-elect of the Chamber’s board, asked
him to draft the letter, and that the information in the letter came from Fleager and
Schwartz. Martinez-Fonts testified that he told Jurey he did not think the Chamber should
send the letter, and the letter was never sent. Moreover, given Fleager’s testimony
regarding the loan from CS to CMI, it does not appear that the letter contains any false
information.
           In short, CI has raised nothing more than a suspicion that the Appellees spread
false information about it. Therefore, the trial court did not err in granting summary
judgment on CI’s claim for tortious interference with prospective business relations.
Business Disparagement
           The elements of business disparagement are: (1) the defendant published false and
disparaging information about the plaintiff; (2) with malice; (3) without privilege; and (4)
that resulted in special damages to the plaintiff. Forbes, ___ S.W.3d at ___, 2003 WL
22999362, at *2. Regarding the first element, the false and disparaging information must
amount to a statement of fact. See Prudential Ins. Co. v. Fin. Review Servs., 29 S.W.3d
74, 82 (Tex. 2000).
           CI asserts that the Appellees published false and disparaging information about it
by telling Jurey that “there was a problem with CI, in that it could not maintain separate
accounts between CMI and [CS].” This is essentially the same as CI’s argument
regarding the second element of tortious interference with prospective business relations
and it fails for the same reason. As we have already discussed, there is no evidence that
the Appellees told anyone that CI could not maintain separate accounts between CMI and
CS. Instead, Martinez-Fonts simply inquired as to whether there were separate accounts
for the two programs.
           Because there is no evidence that the Appellees published a false and disparaging
fact about CI, the trial court did not err in granting summary judgment on CI’s claim for
business disparagement.
Civil Conspiracy
           Liability for civil conspiracy depends upon participation in an underlying tort for
which the plaintiff seeks to hold at least one of the named defendants liable. Tilton v.
Marshall, 925 S.W.2d 672, 681 (Tex. 1996). Therefore, if the plaintiff fails to raise a fact
question as to the liability of at least one of the defendants for an underlying tort, it is
proper to render a summary judgment against the plaintiff on a civil conspiracy claim. 
See Gonzales v. Am. Title Co., 104 S.W.3d 588, 594 (Tex. App.--Houston [1st Dist.]
2003, pet. denied); Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 864 (Tex. App.--Houston [14th Dist.] 2001, pet. denied). Because the trial court properly rendered
summary judgment on CI’s underlying tort claims, it did not err in also granting summary
judgment on CI’s claim for civil conspiracy.
Exemplary Damages
           Recovery of exemplary damages requires a finding of an independent tort with
accompanying actual damages. Schlueter v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998);
Eberle v. Adams, 73 S.W.3d 322, 339 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). 
As with the civil conspiracy claim, because the trial court properly rendered summary
judgment on all of CI’s tort claims, it did not err in also granting summary judgment on
CI’s claim for exemplary damages.
           CI’s first issue is overruled.
Conclusion
           For the reasons stated herein, the judgment of the trial court is affirmed.
 
                                                                  SUSAN LARSEN, Justice
December 23, 2004

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.